[No. 59173-3.    En Banc.    February 10, 1994.]

*In the Matter of the Proceedings of King County for the Foreclosure of Liens for Delinquent Real Property Taxes for the Years 1985 Through 1988, and Some Prior Years.*

SAC DOWNTOWN LIMITED PARTNERSHIP, ET AL, *Appellants*, v. JACK KAHN, ET AL, *Respondents*.

*Simmons, Viall & Lee,* by *Wilton S. Viall III,* for appellants.

*Edwards, Sieh, Wiggins & Hathaway,* by *Malcolm L. Edwards, Howard M. Goodfriend,* and *Catherine W. Smith,* for respondents Kahn.

*Foster Pepper & Shefelman* and *Mark J. Nielsen,* for respondent Washington Mutual Savings Bank.

DURHAM, J. — In *In re Foreclosure of Liens,* 117 Wn.2d 77, 811 P.2d 945 (1991), we reversed the trial court's vacation of a tax foreclosure judgment, but remanded for a determination of whether the property description in the notice of foreclosure was sufficient. The case now returns on direct appeal from the trial court's decision on remand. On remand, the trial court found the description was sufficient and reinstated the foreclosure judgment and tax sale. Gary Gaffner disputes the trial court's finding that the description was sufficient. Jack and Denise Kahn claim the trial court erred in not awarding damages for their loss of the use of the property during the period the foreclosure sale was challenged. Washington Mutual disputes the Kahns' claims regarding damages. We affirm, holding (1) that substantial evidence supports the trial court's finding as to sufficiency of the property description, and (2) that the trial court did not abuse its discretion when it denied damages in restitution.

FACTS

As this court's prior opinion explains more fully, this dispute concerns a parcel of property formerly owned by a limited partnership managed by appellant Gary Gaffner. In 1989, cross appellants Jack and Denise Kahn purchased the property at a tax foreclosure sale. Various parties claiming an interest in the property, including Gary Gaffner, then brought an action to vacate the tax foreclosure judgment due to mistake pursuant to CR 60(b) and for lack of proper notice as required by RCW 84.64.050. The trial court vacated the foreclosure, but this court reversed and remanded. On remand, the trial court upheld the foreclosure and the consequent sale to the Kahns. It is this judgment which is the subject of this second appeal.

On June 2, 1988, King County initiated the foreclosure action at issue here by issuing a certificate of delinquency and filing it with the superior court. The certificate listed 637 parcels for which taxes were delinquent for 3 or more years. Between June 13 and October 27, 1988, the County mailed notices of the foreclosure action, by certified mail, to the owners listed on the tax rolls for each of the 637 parcels. The County also ordered title reports on each parcel and mailed notice to record owners who had not been located on the tax rolls as well as persons listed in the title reports as having a recorded interest or lien in the property other than an easement or covenant. Finally, on October 28, 1988, the summons and notice of the foreclosure action was published in the Seattle Times.

The parcel at issue here is Commercial Unit # 1 of Market Place North Condominiums. Market Place North is bounded by Western Avenue, Virginia Street, and First Avenue, and it consists of both residential and commercial units. Commercial Unit # 1 contains a Haagen-Dazs Ice Cream store and one of the Seattle Athletic Club's exercise rooms. The other two commercial units are occupied by the Seattle Athletic Club and Cafe Sport, a restaurant operated by the Club. The Seattle Athletic Club is owned and operated by SAC Downtown Limited Partnership (Owners) and managed by SAC's

general partner, Gary Gaffner. Washington Mutual holds security interests in all three commercial units.

Gaffner received notice of the foreclosure and sale by registered mail at his home address on June 16, 1988. This notice was addressed to Gary P. Gaffner, which is his correct name. On October 5, he received a second notice which was also mailed to his home address. This notice was addressed to SAC Downtown c/o Gary Gaffner, general partner. Both notices described the property as:

UNIT COM'L #1
MARKET PLACE NORTH CONDOMINIUM
PCT OF VALUE .6492
WESTERN AVENUE COM'L #1

and gave its street address as "88 Virginia Street". Clerk's Papers, at 674-75.

When the Owners received notices of delinquency and the pending foreclosure, they sought assistance from their mortgage lender, Washington Mutual. To protect its own interests in the property, Washington Mutual agreed to pay the delinquencies. Washington Mutual obtained a title report which, due to a clerical error, indicated that the foreclosure was pending only on the Seattle Athletic Club unit. When Washington Mutual contacted the County to find out how much was due, the County advised that there were two related parcels that were also delinquent. Washington Mutual nevertheless did not accept the information or make a payment on the other two units. On December 30, 1988, the County obtained a judgment foreclosing its tax liens. The Kahns and others purchased the property at a tax sale on January 13, 1989.

On January 20, 1989, Washington Mutual moved to vacate the tax foreclosure judgment based on its error in ascertaining the scope of the deficiency. Gaffner joined in this motion. He also argued that the notices he received were defective since, he claimed, 88 Virginia Street is not the correct address of his property, which fronts on Western Avenue. On January 24, 1989, the trial court issued a temporary restraining order barring the Kahns from exercising

control over or possession of the property. On May 15, 1989, the court vacated the foreclosure judgment, set aside the tax sale, and directed the County to destroy the Kahns' tax deed. The court found that Washington Mutual's mistake constituted grounds for relief under CR 60(b) and that the notice the County provided was invalid because it contained the wrong address.

The Court of Appeals certified the appeal to this court, which held that a taxpayer's mistake was not a valid basis for vacating the foreclosure judgment. *Liens*, 117 Wn.2d at 83-84. This court also held that the County had notified all persons who were entitled to notice and that the notice was constitutionally adequate. *Liens*, at 88-92. Finally, we held that the sufficiency of the description of the subject property was a question of fact, on which the trial court had failed to enter adequate findings. *Liens*, at 87. We remanded with directions that the trial court determine "if the property description read as a whole provided an intelligent means of identifying the property and was not misleading". *Liens*, at 87. "If a person of ordinary intelligence could identify the described property with reasonable certainty, the description was adequate. If not, then no jurisdiction was obtained, and the sale was void." *Liens*, at 87.

Following an evidentiary hearing, the trial court on remand found that 88 Virginia Street is the correct street address of the Market Place North Condominium as a whole. The address was selected by the developer as the address for the development permit, and is used by both the county assessor and the Seattle Department of Construction and Land Use. All of the commercial units in Market Place front on Western Avenue. There is no single address for Commercial Unit #1. The address of the third of that unit occupied by Haagen-Dazs is 2010 Western Avenue. The remaining portion of Commercial Unit #1, occupied by the Seattle Athletic Club, has no separate address. The main entrance to the Club is in Western Avenue Commercial Unit #2. Finally, the court found that the descriptions employed by the County, taken as a whole, provided an intelligent

means of identifying the property, would enable any person of ordinary intelligence to identify the subject property with reasonable certainty, and did not mislead Gaffner. The court therefore vacated its May 15, 1989, order and reinstated the foreclosure judgment and tax sale.

The trial court also rejected the Kahns' claim that Gaffner and Washington Mutual were liable in damages for the Kahns' inability to use the property since the foreclosure sale was voided in 1989.

### SUFFICIENCY OF THE DESCRIPTION

■ Whether the description in a tax sale notice is sufficient is a question of fact. *In re Foreclosure of Liens*, 117 Wn.2d at 87; *Centralia v. Miller*, 31 Wn.2d 417, 197 P.2d 244 (1948). This court remanded for a determination of the sufficiency of the property description in light of the standards for sufficiency contained in Washington case law:

> The trial court must determine, taking all the circumstances into account, if the property description read as a whole provided an intelligent means of identifying the property and was not misleading. If a person of ordinary intelligence could identify the described property with reasonable certainty, the description was adequate.

*Liens*, at 87. In addition, this court instructed the trial court that in determining "if a property description is sufficient, the description should be liberally construed and extrinsic evidence may be consulted". *Liens*, at 87.

■ Where the trial court has weighed the evidence, appellate review is limited to determining whether the trial court's findings of fact are supported by substantial evidence, and if so, whether the findings support the conclusions of law and the judgment. *Tacoma v. State*, 117 Wn.2d 348, 361, 816 P.2d 7 (1991).

Charles Day, a land use technician with Seattle's Department of Construction and Land Use, testified that "88 Virginia" was the address assigned on the building permit for the Market Place North Condominiums. Day also testified that the address was assigned to the entire residential and commercial condominium complex bounded by Virginia

Street, First Avenue, and Western Avenue. He stated that a unitary or principal address remains with a condominium project throughout the construction and permitting process, and throughout the life of the property unless it is officially changed. Dick Hergert, supervisor of the commercial appraisal section of the Department of Assessments, testified that the assessor's office uses only one address for large condominium projects which front on several streets. He confirmed that "88 Virginia Street" was the initial address for the Market Place North Condominiums and that this address was maintained for the entire complex even after the individual units were sold. For example, the parcel at issue here is designated as Commercial Unit #1 of the Market Place North Condominiums, 88 Virginia Street.[1] The evidence clearly supports the conclusion that the property description Gaffner received, read as a whole, provided an intelligent means of identifying the property and was not misleading.

In sum, a review of the record concerning the sufficiency of the property description reveals substantial evidence supporting the findings of fact, the conclusions of law, and the order reinstating the foreclosure judgment and tax sale.[2] Since the property description provided an intelligent means of identifying the property and was not misleading, the statutory jurisdictional requirements were met. The trial court properly reinstated the foreclosure judgment and tax sale.

---

[1]Based on this testimony and the unique nature of condominiums, *see, e.g.*, the Condominium Act, RCW 64.34, it is safe to conclude that condominium addresses are not analogous to the addresses of single family dwellings.

[2]Gaffner claims that the finding of fact that he personally was not misled shows the court applied a subjective test, whereas the proper test is an objective one. However, the court also found that the description read as a whole provided an intelligent and adequate means of identifying the property.

Gaffner also contends that according to finding of fact 17 the property could be located only by reviewing additional documents. This misconstrues our holding in the prior appeal. The question is whether "the property description read as a whole provided an intelligent *means* of *identifying* the property" (italics ours), *Liens*, at 87, not whether all materials relevant to an impending foreclosure are somehow referenced in the notice.

## RESTITUTION

■  We next turn to the issue of restitution. This court reviews questions of law de novo. *Multicare Med. Ctr. v. Department of Social & Health Servs.*, 114 Wn.2d 572, 582 n.15, 790 P.2d 124 (1990). In matters of equity, however, trial courts have broad discretionary power to fashion equitable remedies. We review the authority of a trial court to fashion equitable remedies under the abuse of discretion standard. *Rupert v. Gunter*, 31 Wn. App. 27, 30, 640 P.2d 36 (1982); *Blair v. WSU*, 108 Wn.2d 558, 564, 740 P.2d 1379 (1987).

■  The Kahns claim they are entitled to restitution under RCW 7.40.200 and RAP 12.8. Washington Mutual and Gaffner argue that RCW 7.40.200 is inapplicable. We agree. RCW 7.40.200 provides:

> If an injunction to stay proceedings after verdict or judgment in an action for the recovery of real estate, or the possession thereof, be dissolved, the damages assessed against the party obtaining the injunction, shall include the reasonable rents and profits of the lands recovered . . . .

*See Kelly v. Schorzman*, 3 Wn. App. 908, 913, 478 P.2d 769 (1970) (purpose of statute is to compensate parties who have been denied the benefits of real property because of an injunction to stay proceedings which is later dissolved). This action began as a foreclosure proceeding, not an action for injunctive relief. Although Gaffner and Washington Mutual brought postjudgment motions in the nature of "an action for the recovery of real estate, or the possession thereof", RCW 7.40.200 allows an award of damages only against a "party obtaining the injunction" to stay proceedings. Gaffner and Washington Mutual did not move for an injunction to stay the foreclosure order. They moved to vacate the foreclosure order under CR 60(b). The trial court granted that motion and invalidated the Kahns' tax deed. That order clearly was not "an injunction to stay proceedings after verdict or judgment . . . ." RCW 7.40.200. Compare *Kelly v. Schorzman*, 3 Wn. App. at 909 (party was enjoined from using the property).

Washington Mutual and Gaffner next argue that RAP 12.8, by its clear disjunctive language, precludes any remedy in addition to restoring the property to the Kahns.[3] The Kahns urge us to find that, notwithstanding the clear disjunctive language of RAP 12.8, comment *e* to section 74 of the Restatement of Restitution (1937) applies.[4] We need not reach the issue of the applicability of comment *e*, however. The text of section 74 provides for restitution where a judgment is subsequently reversed "unless restitution would be inequitable . . .." Restatement of Restitution § 74 (1937). The trial court considered the equities of the case before declining to hear further argument on restitution.

On December 9, 1991, the trial court conducted a hearing on the sufficiency of the property description, and on March 10, 1992, the court issued findings of fact and conclusions of law on the sufficiency of the property description. Following resolution of the sufficiency issue, the trial court was thoroughly briefed on the damages issue, including equitable considerations. The trial court explicitly found that the equities were not in favor of the Kahns. Even assuming for argument the validity of the Kahns' interpretation of RAP 12.8 and comment *e* to section 74 of the Restatement of Restitution, restitution is an equitable remedy. On equitable matters, a court has broad discretion, which will be disturbed on appeal only if the trial court abused its discretion. We cannot conclude that the trial court abused its discretion here in arriving at its conclusion concerning the equities.

---

[3]RAP 12.8, titled "Effect of Reversal on Intervening Rights"; provides in full:

"If a party has voluntarily or involuntarily partially or wholly satisfied a trial court decision which is modified by the appellate court, the trial court shall enter orders and authorize the issuance of process appropriate *to restore to the party any property taken from that party, or the value of the property.* An interest in property acquired by a purchaser in good faith, under a decision subsequently reversed or modified, shall not be affected by the reversal or modification of that decision." (Italics ours.)

[4]Comment *e* provides in relevant part:

"If the property of the judgment debtor was awarded to the judgment creditor, or if the judgment creditor purchased it upon execution sale, the judgment debtor is entitled to specific restitution, *together with the value of its use in the meantime* . . .." (Italics ours.)

206

In conclusion, we hold that substantial evidence supports the trial court's finding that the property description was sufficient, and that the trial court did not abuse its discretion in deciding that the equities did not compel an award of damages to the Kahns.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DOLLIVER, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.