FILED
COURT OF APPEALS
DIVISION II

2015 JUN 23 AM 8: 31

STATE OF WASHINGTON

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| HARTSTENE POINTE MAINTENANCE ASSOCIATION, | No. 45739-3-II |
| Respondent, | |
| v. | |
| JOHN E. DIEHL, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — John Diehl appeals the trial court's orders in a declaratory judgment action. He argues that because the trial court's findings of fact do not support its conclusions of law, the trial court erred when it granted Hartstene Pointe Maintenance Association's (HPMA) request for declaratory judgment and ordered that HPMA's governing instruments do not grant owner-members a right to appeal decisions of the HPMA Board of Directors (Board). He also argues that the trial court erred when it ordered that HPMA could exclude Diehl from closed executive sessions when he acted in his capacity as an owner-member and threatened litigation against HPMA. Finally, he argues that the trial court abused its discretion when it denied Diehl's request for declaratory judgment that HPMA's hazard tree policy is invalid. Because the trial court's conclusions of law are supported by its findings of fact, we affirm.

## FACTS

I.    SUBSTANTIVE FACTS

John Diehl owns two lots within the community of Hartstene Pointe, located in Mason County. HPMA is a nonprofit corporation and the homeowner's association for Hartstene Pointe. At all times relevant to this appeal, Diehl had dual roles as an owner-member and a Board member of HPMA.[1]

The governing instruments of the HPMA are the Covenants, Conditions, and Restrictions (CC&Rs) and the Rules and Regulations. Article 2 of the Rules and Regulations is entitled "Interpretation, Administration, and Enforcement of these Rules and Regulations." Clerk's Papers (CP) at 7 (findings of fact (FF) 35). Article 2, § 4 provides that an owner adversely affected by a Board decision may appeal to the Board for a hearing.[2] No other provisions in the governing instruments grant an owner-member a broad right to appeal Board decisions.

In September 2011, the Board adopted an interim hazard tree policy, applicable to common areas within Hartstene Pointe. Diehl cast the lone dissenting vote. The Board subsequently adopted additional hazard tree policies, with a final policy adopted on December 15, 2012. This policy provides that the HPMA manager shall generate a "Manager's Notice of Proposed Action" regarding tree removal from common areas and that notice, along with an arborist's report, shall be posted in the HPMA clubhouse and on the HPMA website for 15 days. CP at 8 (FF 47).

---

[1] The Board derives its authority from the governing instruments of the HPMA and is bound to carry out duties and manage HPMA pursuant to the governing instruments. Ch. 64.38 RCW; Ch. 24.03 RCW.

[2] CC&R article 9 is titled "Interpretation, Administration, and Enforcement of Covenants." CP at 6 (FF 30). Article 9, § 3 allows any owner to complain of an actual or threatened violation of the CC&Rs to the Board and demand that HPMA prevent or abate the violation.

The policy provides "considerable specificity" regarding the manager's directives and duties, and the manager may consult with the Board with questions arising under the policy. CP at 8 (FF 51). No manager "felt confused or inadequately guided" by the policy. CP at 8 (FF 52). The "non-imminent hazard" section of the policy allows owner-members to "submit [to the Board] any written comments, objections, related information, or written alternative proposal" that the owner chooses. CP at 8 (FF 49). Additionally, under this section of the policy, an owner-member "may file a written notice of intent that the owner is retaining an independent, professionally qualified arborist" to prepare a second opinion. CP at 8 (FF 48).

Diehl sought to appeal to the Board its decision to adopt the September 2011 policy. As an owner-member, he claimed a right to appeal under CC&R article 9 and Rules and Regulations article 2. The Board president reviewed the governing instruments, discussed the issue with other Board members and legal counsel, and believed that Diehl had no right to appeal. The president drafted a summary of his meeting with legal counsel and forwarded it to all Board members except Diehl. The president believed Diehl and the Board held adversarial positions.

In October 2011, the Board met and asked Diehl to recuse himself from the portion of a closed executive session meeting during which the Board planned to discuss Diehl's request for an appeal. Diehl did not recuse himself and the Board did not discuss the issue.

II.  PROCEDURAL HISTORY

In November 2011, HPMA filed a declaratory judgment action in Mason County Superior Court to determine whether the governing instruments vested a right to appeal the Board's adoption of the hazard tree policy or other management and policy decisions; whether HPMA may convene in closed executive session to consider legal communications, consult with legal counsel, and discuss likely or pending litigation threated by Diehl against HPMA; and whether Diehl is

required to recuse himself from such closed executive sessions. Diehl filed numerous counterclaims against HPMA, including that the hazard tree policy was invalid.

Diehl filed a motion for summary judgment, which the trial court granted in part by invalidating the hazard tree policy adopted in September 2011. The trial court denied the remainder of Diehl's motions for summary judgment. Diehl filed amended counterclaims challenging the revised hazard tree policies, including the final policy adopted on December 15, 2012. The matter proceeded to trial.

Following a five day bench trial, the trial court entered findings of fact and conclusions of law. It concluded that article 2, § 4 relates to the interpretation, administration, and enforcement of the Rules and Regulations and no reasonable reading would permit an owner to appeal a policy the Board validly adopted. The trial court concluded that the governing instruments as a whole "do not vest an owner . . . with any right to appeal to the Board the Board's adoption of the interim hazard tree policy or similar Board decisions."[3] CP at 11(conclusions of law (CL) 6).

Additionally, the trial court concluded that during the times at issue, Diehl was acting in his capacity as an owner-member and was likely to initiate litigation against HPMA.[4] And, pursuant to former RCW 64.38.035(2) (1995), HPMA had the authority to convene in closed executive session to consult with legal counsel and discuss likely or pending litigation.

---

[3] The trial court also concluded that no reasonable reading of CC&R article 9 would permit an owner to appeal a policy validly adopted by the Board.

[4] In 2013, the legislature amended RCW 64.38.035. RCW 64.38.035(2) became (4) but remained substantively consistent. LAWS OF 2013 ch. 108, § 1.

The trial court concluded that the hazard tree policy adopted on December 15, 2012 was not invalid or defective in any manner relating to the delegation of duties to the manager and did not grant unreasonable discretion or overly broad powers to the manager. The trial court also concluded that the posting requirement constitutes reasonable notice, and the hazard tree policy was not unreasonably vague or biased. Finally, the trial court concluded that the "[n]on-imminent hazard" section of the policy was broad enough to enable owner input and did not limit an owner to any source of additional information. CP at 12 (CL 15).

The trial court granted HPMA's request for declaratory judgment that its governing instruments did not grant owner-members a right to appeal Board policy decisions and that the Board is and was authorized to convene in closed executive session excluding Diehl. The trial court denied Diehl's request for declaratory judgment that the hazard tree policy was invalid. Diehl appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

We review a trial court's dismissal of a declaratory judgment action for abuse of discretion. *Wash. Fed'n of State Emps. v. State,* 107 Wn. App. 241, 244, 26 P.3d 1003 (2001). And ordinary rules of appellate procedure apply to an appeal from a declaratory judgment. *Lakewood Racquet Club, Inc. v. Jensen,* 156 Wn. App. 215, 223, 232 P.3d 1147 (2010) (a declaratory judgment is an appealable final judgment). We review declaratory judgments the same way as any other civil action. RCW 7.24.070.

Diehl affirmatively accepts the trial court's findings of fact.[5] He argues only that the trial court's legal conclusions and order are not supported by its findings of fact. Br. of Appellant at 3. Generally, we treat unchallenged findings of the trial court as verities on appeal, and our review is limited to determine whether the findings support the conclusions of law. *Jensen v. Lake Jane Estates*, 165 Wn. App. 100, 110, 267 P.3d 435 (2011); *SAC Downtown Ltd. P'ship v. Kahn*, 123 Wn.2d 197, 202, 867 P.2d 605 (1994). Where, as here, the facts are undisputed and the only issues are questions of law, the standard of review is de novo. *SAC Downtown Ltd. P'ship*, 123 Wn.2d at 204.

Diehl is a self-represented litigant (SRL) who is held to the same standard as an attorney and must comply with all procedural rules on appeal and failure to comply may preclude review. *In re Marriage of Olson*, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). An appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). Arguments that are not supported by any reference to the record or by any citation of authority need not be considered. *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). We are not required to search the record to locate the portions relevant to a litigant's arguments. *Mills v. Park*, 67 Wn.2d 717, 721, 409 P.2d 646 (1966). And, the party seeking review is responsible for perfecting

---

[5] Diehl attempts to argue matters outside the findings, but he did not produce any portion of the Verbatim Report of Proceedings (VRP) on appeal. The appellant bears the burden of complying with the Rules of Appellate Procedure (RAP) and perfecting the record on appeal so the reviewing court has before it all the facts necessary to decide the issues. *In re Marriage of Haugh*, 58 Wn. App. 1, 6, 790 P.2d 1266 (1990). We may decline to reach the merits of an issue if this burden is not met. *See State v. Wheaton*, 121 Wn.2d 347, 365, 850 P.2d 507 (1993).

Diehl also cites to several trial exhibits; however, from the record it is impossible to determine if the trial court admitted these exhibits. Without the VRP or any other affirmative proof of admission, we decline to consider these documents.

the record, including designating the necessary clerk's papers. RAP 9.6; *Dash Point Vill. Assocs. v. Exxon Corp.*, 86 Wn. App. 596, 612, 937 P.2d 1148 (1997).

## II.    OWNER-MEMBER RIGHT TO APPEAL VALIDLY ADOPTED POLICIES

Diehl argues that the plain language of Rules and Regulations article 2, § 4 gives owner-members a right to appeal the Board's adoption of the hazard tree policy to the Board.[6] He seems to argue his right to appeal exists because the hazard tree policy violates the CC&Rs. We disagree.

The governing documents of a homeowners' association are interpreted in accordance with accepted rules of contract interpretation. *Roats v. Blakely Island Maint. Comm'n, Inc.*, 169 Wn. App. 263, 273-74, 279 P.3d 943 (2012); *Wilkinson v. Chiwawa Communities Ass'n*, 180 Wn.2d 241, 249, 327 P.3d 614 (2014). The primary objective in contract interpretation is to determine the drafter's intent. *Wilkinson*, 180 Wn.2d at 250. Generally, the drafter's intent is a question of fact, "'[b]ut where reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law.'" *Wilkinson*, 180 Wn.2d at 250 (quoting *Ross v. Bennett*, 148 Wn. App. 40, 49-50, 203 P.3d 383 (2009)). In determining the drafter's intent, we give language "'its ordinary and common use' and will not construe a term in such a way 'so as to defeat the plain and obvious meaning.'" *Wilkinson*, 180 Wn.2d at 250 (quoting *Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 816, 854 P.2d 1072 (1993).

Rules and Regulations article 2, § 4 allows owner-members to appeal to the Board if they are "*adversely affected*" by a Board decision. CP at 7 (FF 36) (emphasis added). The trial court found that there is nothing in the governing instruments that give owner-members a broad right to appeal all decisions of the Board. Here, the trial court did not find that Diehl was adversely affected by the adoption of the hazard tree policy but did conclude as a matter of law that this

---

[6] Diehl makes no argument regarding an appeal under CC&R article 9 in his appellate brief.

section "do[es] not vest an owner member with any right to appeal to the Board the Board's adoption of the interim hazard tree policy or similar Board decisions." CP at 11 (CL 6). Under the plain language of article 2, § 4, the trial court's conclusion of law is supported by the undisputed findings of fact and Diehl has no right to appeal to the Board. We hold that the trial court did not err by granting HPMA's declaratory judgment that "HPMA's governing instruments do not grant owner-members a right to appeal decisions of the HPMA Board." CP at 14 (Order 2).

III.    EXCLUSION OF DIEHL FROM CLOSED EXECUTIVE SESSION

Diehl argues the trial court erred by ruling that HPMA may exclude Diehl from its closed executive sessions. We disagree.

Diehl assigns error to the trial court's order "granting HPMA's request for declaratory judgment that its Board has the right to exclude a Board member when it meets in closed sessions to discuss likely or pending litigation, when its majority believes that the member may be an adversary in litigation." Br. of Appellant at 1. Diehl additionally assigns error to the trial court's denial of his "request for declaratory judgment that he as a Board member was entitled to disclosure of communications from the corporate attorney." Br. of Appellant at 1.

However, the trial court did not enter a general order that HPMA has the right to exclude a Board member from closed executive sessions. Rather, it ordered that "in this particular case, the HPMA Board had and has the right to exclude Diehl from such closed executive session." CP at 14 (Order 3). The trial court correctly ruled that because Diehl was acting in his capacity as an owner-member and not a Board member,[7] and because he was likely to bring litigation against

---

[7] We accept as a verity on appeal the trial court's unchallenged findings that Diehl acted in his capacity as an owner-member and not a Board member and that he was likely bring litigation against HPMA. *Jensen*, 165 Wn. App. at 110. We do not consider Diehl's argument that he acted in his capacity as a minority board member.

HPMA, the Board could exclude him from a closed executive session while they consulted with legal counsel regarding the subject of the potential litigation.

To the extent that Diehl is arguing that HPMA was not authorized to meet in closed executive session, his argument fails. Former RCW 64.38.035(2) (1995) provides that "[u]pon the affirmative vote in open meeting to assemble in closed session, the board of directors may convene in closed executive session to . . . consult with legal counsel or consider communications with legal counsel; and discuss likely or pending litigation. . . ."[8] The Board could meet in a closed executive session to consult with legal counsel regarding Diehl's likely litigation pursuant to former RCW 64.38.035(2).

Diehl cites to no authority that the Board may not exclude an owner-member in an adversarial position to the Board from such closed executive session in which likely litigation involving that owner-member is discussed. An appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). Arguments that are not supported by any reference to the record or by any citation of authority need not be considered. *Cowiche Canyon Conservancy,* 118 Wn.2d at 809.

Diehl also seems to argue that the trial court erred when it ordered that HPMA did not discriminate against Diehl when it failed to disclose to Diehl the advice of legal counsel and legal communications. Because the trial court found that Diehl was acting as an adversarial and in his

---

[8] The trial court entered a finding of fact that former RCW 64.38.035(2) (1995) provides that "upon the affirmative vote in opening meeting to assemble in closed session, the board of directors may convene in closed executive session to consider personnel matters, consult with legal counsel, or consider communications with legal counsel and discuss likely or pending litigation, matters involving possible violations of the governing documents of the association, and matters involving the possible liability of an owner to the association." CP at 7 (FF 39).

capacity as owner-member during the times at issue, he was not a Board member entitled to such information. This argument is without merit.

III.    HAZARD TREE POLICY

Diehl argues that the trial court's conclusion of law that the hazard tree policy is valid is not supported by its findings of fact. Specifically, he argues that the policy is invalid because it does not provide sufficient notice to owner-members prior to manager action, it sets vague standards for labeling trees as imminent hazards, it improperly grants authority to the manager, it does not contain an adequate appeal process, and it is inconsistent with the CC&Rs. We hold that because the policy both provides sufficient notice and for an adequate appeal process, the trial court did not abuse its discretion when it denied Diehl's request for declaratory judgment that HPMA's hazard tree policy is invalid. We decline to consider Diehl's remaining arguments for the reasons we previously articulated.[9]

A.    The Policy Provides Sufficient Notice

Diehl first argues that the trial court's conclusion that the hazard tree policy provides sufficient notice to owner-members of proposed tree removals is not supported by its findings of fact.[10] He argues that because the policy shifts the burden of notice of removal of non-imminent hazard trees to owner-members, it does not provide sufficient notice prior to action. Additionally,

_____

[9] While Diehl now attempts to argue matters outside the findings, our review is limited to only whether those facts pertaining to the hazard tree policy support the trial court's conclusions of law and orders. *See SAC Downtown Ltd. P'ship*, 123 Wn.2d at 202.

[10] The trial court concluded the hazard tree policy "is not unreasonably vague or biased, [and it] provides sufficient notice." CP at 12 (CL 17).

he argues that the notice requirement contained in the policy is inconsistent with the Rules and Regulations.[11] We hold that the trial court's conclusion of law is supported by its findings of fact.

The policy does not shift the burden of notice to owner-members. The trial court specifically found that the policy provides that the "HPMA Manager shall, after reviewing the arborist's report, generate a 'Manager's Notice of Proposed Action'" which, "along with the arborist's report, shall be posted in the HPMA Clubhouse and on the HPMA website for 15 days." CP at 8 (FF 47). This policy places an affirmative duty on HPMA to provide notice to owner-members. Thus, Diehl's argument fails.

Diehl next argues that this notice is inconsistent with the definition of notice contained in the Rules and Regulations definition section, requiring notice by first-class mail or personal service to every owner-member. HPMA contends that the trial court rejected Diehl's claim below. But the trial court entered no findings regarding the definition of notice contained in the Rules and Regulations and its applicability to the hazard tree policy. Because we generally do not consider issues raised for the first time on appeal, and because the appellate record does not demonstrate Diehl argued this issue to the trial court, we decline to reach the merits of this argument. RAP 2.5(a). Diehl bears the burden of perfecting the record on appeal so we can decide the issues presented. *Dash Point Vill. Assocs.*, 86 Wn. App. at 612.

---

[11] In support of his argument, Diehl contends that HPMA must comply with due process requirements. He cites to numerous cases regarding due process notice required by government and quasi-government agencies. HPMA is a nonprofit corporation and homeowners' association, and therefore not bound by constitutional due process requirements. Ch. 24.03 RCW; Ch. 64.38 RCW. Diehl cites no authority to the contrary.

### B. Imminent Hazard Trees

Diehl next argues that the hazard tree policy sets vague standards for labeling trees as imminent hazards. However, Diehl admits that the trial court did not specifically address this issue. The trial court entered no findings of fact, conclusions of law, or orders regarding the policy of labeling of trees as imminent hazards. Again, because we generally do not consider issues raised for the first time on appeal, and because the appellate record does not demonstrate Diehl argued this issue to the trial court, we decline to reach the merits of this argument. RAP 2.5(a). Diehl bears the burden of perfecting the record on appeal so we can decide the issues presented.[12] *Dash Point Vill. Assocs.*, 86 Wn. App. at 612.

Diehl additionally argues that even if the standards for labeling trees as imminent hazards are adequate, the hazard tree policy fails to ensure that the manager acts in compliance with applicable law, including the Mason County Resource Ordinance. But the hazard policy provides that the manager must comply with applicable law in discharging duties under the policy. The community of Hartstene Pointe is in Mason County. Therefore, the Mason County Resource Ordinance is applicable law with which the manager must comply and, pursuant to the policy, the manager may take only action that also complies with the Mason County Resource Ordinance. Diehl's argument fails.

---

[12] Diehl did raise this issue in his trial brief but because we do not have the verbatim report of proceedings, we cannot determine what action, if any, the trial court took. CP at 69. We also cannot determine if Diehl actually argued this issue to the trial court. We are bound by the trial court's findings of fact. *Jensen*, 165 Wn. App. at 110.

C.     Grant of Authority to Manager

Diehl argues that the trial court's conclusion that the hazard tree policy "does not grant unreasonable discretion, and does not grant overly broad powers to the HPMA manager" to discharge its duties is not supported by the findings of fact.[13] CP at 12 (CL 16). We disagree.

RCW 64.38.020(3) provides that an association may "[h]ire and discharge or contract with managing agents and other employees, agents, and independent contractors." The trial court found that the policy has "considerable specificity" regarding the manager's directives and duties, and that the manager may consult with the Board with respect to duties arising under the hazard tree policy. CP at 8 (FF 51). Diehl does not challenge this finding of fact. Because HPMA is authorized to hire a manager to discharge its duties and to provide specific directives and duties to that manager, the policy does not grant unreasonable discretion and overly broad powers to the manager. We hold that the trial court's conclusion is supported by its findings of fact.

D.     Owner-Member Appeal of Manager's Decisions

Diehl argues that the trial court's conclusion of law that the hazard tree policy does not limit an owner to any source of additional information regarding trees proposed for removal is not supported by its findings of fact because the policy contains arbitrary time limitations to obtain an expert opinion, which imposes an unreasonable restriction on owner-member challenges to tree removal. The trial court found that under the "non-imminent hazard" section of the hazard tree policy, "'any owner may submit any written comments, objections, related information, or written

---

[13] Diehl entitled a subsection of his opening brief "The Policy grants powers to HPMA's manager inconsistent with HPMA's Rules and the county's Resource Ordinance." Br. of Appellant at 33. However, he provides no argument in support of his assertion that the manager's powers are inconsistent with the Mason County Resource Ordinance. Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration. *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998). We decline to reach the merits of this issue.

alternative proposal' the owner wishes." CP at 8 (FF 49). Diehl does not assign error to this finding, and our review is limited to determining whether the findings support the conclusions of law. *See SAC Downtown Ltd. P'ship*, 123 Wn.2d at 202.

The trial court then concluded that this section "does not limit an owner to any source of additional information, and is broad enough to enable any owner input." CP at 12 (CL 15). This conclusion is clearly supported by the finding because an owner may submit *any* additional information the owner *wishes*, and the owner is therefore not unreasonably limited. Furthermore, Diehl fails to provide any citation to the record or to authority to support his argument. Arguments that are not supported by any reference to the record or by any citation of authority need not be considered. *Cowiche Canyon Conservancy*, 118 Wn.2d at 809. Diehl's argument fails.

E.     Right to Have Benefit of the Common Areas

Finally, Diehl argues that the hazard tree policy is invalid because it allows HPMA more discretion than owner-members to remove trees from common areas, contrary to the right of all owner-members to use, enjoy, and have benefit of the common areas established by CC&R article 2, § 1(e). However, Diehl concedes that "[t]he trial court did not directly address" this question. Br. of Appellant at 38. The trial court entered no findings of fact regarding CC&R article. 2, § 1(e). Again, because we generally do not consider issues raised for the first time on appeal, and because the appellate record does not demonstrate Diehl argued this issue to the trial court, we decline to reach the merits of this argument. RAP 2.5(a).

Because the trial court's findings of fact support its conclusions of law that the hazard tree policy provides sufficient notice to owner-members of proposed tree removals, does not grant unreasonable discretion and overly broad powers to the manager, does not limit an owner to any

14

source of additional information, and is broad enough to enable any owner input, it did not abuse its discretion when it denied Diehl's request for declaratory judgment that the policy is invalid.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Worswick, P.J.

Sutton, J.