# NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILED
12/26/2023
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CENTRAL PUGET SOUND REGIONAL TRANSIT AUTHORITY, a regional transit authority, dba SOUND TRANSIT,<br><br>               Plaintiff,<br><br>          v.<br><br>LMRK PROPCO 3 LLC, a Delaware limited liability company,<br><br>               Appellant,<br><br>CCTMO LLC, a Delaware limited liability company; T-MOBILE WEST TOWER LLC, a Delaware limited liability company; and SPRINT SPECTRUM L.P., a Delaware limited partnership,<br><br>               Respondents,<br><br>MARYMOOR STORAGE PARTNERS LLC, a Washington limited liability company; PUGET SOUND ENERGY, INC., a Washington public utility corporation; AT&T INC., a Delaware corporation; KING COUNTY, a Washington municipal corporation; and ALL UNKNOWN OWNERS AND UNKNOWN TENANTS,<br><br>               Defendants. | No. 84466-1-I<br><br>DIVISION ONE<br><br><br><br>PUBLISHED OPINION |

BOWMAN, J. — Central Puget Sound Regional Transit Authority (Sound Transit) paid $16.65 million as full and just compensation to condemn by eminent domain property owned by Marymoor Storage Partners LLC. The property

No. 84466-1-I/2

included a cell tower in which LMRK PROPCO 3 LLC (Landmark), CCTMO LLC,

T-Mobile West Tower LLC (T-Mobile Tower), Sprint Spectrum LLC, and T-Mobile

West LLC[1] asserted compensable leasehold interests.  Landmark appeals the

trial court's disbursement of just compensation funds to CCTMO, T-Mobile

Tower, Sprint, and T-Mobile West.  Landmark argues those entities were

judicially estopped from moving for disbursement based on an agreement that

their interests would be determined after an evidentiary hearing.  It also argues

that the trial court did not follow statutory procedures before disbursing the funds

and that the disbursement was inequitable.  We affirm.

FACTS

Marymoor owned 2.5 acres in Redmond.  It used most of the property for

a self-storage facility.  But it leased a small section on the northwest corner of the

property and several adjacent storage units to T-Mobile Tower.  T-Mobile Tower

then built and operated a 100-foot-tall cell tower on the land, leasing space on

the tower for telecommunications antennae to several phone companies.

Marymoor assigned Landmark the right to collect rent from T-Mobile Tower's

ground lease.

By 2018, AT&T, Sprint, and T-Mobile West each held leasehold interests

in the cell tower, granting the companies access and utility easements for affixing

and operating clusters of telecommunication antennae.  AT&T, Sprint, and T-

Mobile West also held leasehold interests in the storage facility, granting each

company access to and use of a storage unit for equipment.  T-Mobile Tower

---

[1] T-Mobile Tower and T-Mobile West are different entities.

No. 84466-1-I/3

held a leasehold interest in the cell tower, authorizing it to rent space on the tower. T-Mobile Tower leased back its entire interest to CCTMO. And it granted CCTMO a power of attorney to act on its behalf on matters related to the cell tower leases. So, CCTMO held a sublease interest in the management of the tower and the rent paid by AT&T, Sprint, and T-Mobile West. Finally, Landmark held the ground lease for the cell tower site and the storage units. That interest gave Landmark the right to collect income from T-Mobile Tower for use of the site and from AT&T, Sprint, and T-Mobile West for rental of the storage units.

In early 2018, Sound Transit notified Marymoor that it intended to condemn by eminent domain Marymoor's property to construct, operate, and maintain a portion of the "Downtown Redmond Link Extension" of its light rail project. In preparation, Sound Transit hired property advisors to appraise Marymoor's property. The October 2018 appraisal valued the collective interests in the property at $16.65 million—$15.5 million for the land and $1.15 million for the cell tower interests.

In early 2019, Marymoor tried selling the property to Sound Transit to avoid condemnation proceedings. But to do so, it needed to free its title from all encumbrances. So, following mediation in June 2019, Marymoor and Landmark executed a settlement agreement. Marymoor agreed to pay Landmark $950,000, and Landmark agreed to secure releases of all the cell tower tenants' leasehold interests. Marymoor then agreed to sell the property to Sound Transit for $16.7 million. But Landmark failed to clear the title, and in September 2019, Marymoor and Sound Transit's purchase and sale agreement fell through. As a

3

No. 84466-1-I/4

result, Marymoor and Landmark sued each other for breach of the June 2019 settlement agreement. The case proceeded to arbitration.

In October 2019, Sound Transit petitioned to condemn by eminent domain Marymoor's fee simple interest in the property as well as all encumbrances on the land. It named Marymoor, Landmark, and CCTMO as respondents.[2] The court set the matter for trial in June 2020.

In January 2020, the court entered a stipulated order granting Sound Transit immediate use and possession of the property once it deposited $16.65 million into the court registry as just compensation for the taking. Soon after, T-Mobile Tower petitioned to intervene, which the court granted. After T-Mobile Tower intervened, CCTMO's attorneys represented its interest because their interests were coextensive.[3]

In February 2020, Marymoor moved to release $15.5 million of the funds in the court registry. CCTMO objected, arguing the motion was premature because the parties had not yet determined their separate cell tower and land interests. Alternatively, CCTMO requested that the court leave $2 million in the registry to ensure compensation for the remaining interests. The court granted Marymoor's motion but left $2 million in the registry. It ordered the release of $14.65 million to Marymoor.

A few weeks later, AT&T and Sprint joined as parties to the condemnation proceeding. In April 2020, Sound Transit filed a second amended eminent

---

[2] It also named several other entities not involved in this appeal.

[3] We refer to CCTMO and T-Mobile Tower collectively as CCTMO for the remainder of this opinion.

4

No. 84466-1-I/5

domain petition identifying the new parties'[4] interests in the property. Although the amended petition did not name T-Mobile West, it was a cell tower tenant and became a claimant and interested party in the condemnation proceedings under RCW 8.04.140.[5]

In May 2020, the court entered a "Stipulated Judgment and Decree of Appropriation" between Sound Transit and Marymoor establishing $16.65 million as full and just compensation for the "Condemned Property and all rights, estates, and interests therein, and for termination of any and all leases and easements, recorded or unrecorded, that burden the Property." The other parties did not sign the stipulation. But in July 2020, the remaining parties—Landmark, CCTMO, AT&T, Sprint, and T-Mobile West—entered a stipulated order with Marymoor to strike their June 2020 trial date and affirm the full condemnation value of the property as $16.65 million.

The stipulated order noted that $2 million was available to be appropriated between the remaining interests. The parties agreed to set a "post-trial briefing schedule" and an "evidentiary hearing . . . to determine allocation of the remaining funds" in the court registry and that the trial court could allocate the remaining funds "via post-trial motions." The parties agreed on a briefing schedule that included a November 2020 deadline to exchange appraisals, a December 2020 discovery deadline, and a March 2021 evidentiary hearing.

---

[4] T-Mobile Tower, AT&T, and Sprint.

[5] Chapter 8.04 RCW governs eminent domain actions by the State. But under RCW 8.12.120, a person or entity unnamed in a city's eminent domain petition and claiming an interest in the subject property may also be admitted as a party to the lawsuit.

CCTMO, Sprint, and T-Mobile West exchanged appraisals of their interests before the November 2020 deadline.  CCTMO's appraisal valued its interest at $1,045,000, Sprint's appraisal valued its interest at $68,000, and T-Mobile West's appraisal valued its interest at $125,000.

Landmark also provided appraisals of AT&T, Sprint, and T-Mobile West's interests by the deadline.  But Landmark's appraisals did not estimate those parties' leasehold interests in the cell tower.  Instead, its appraisals valued those parties' interests in only the storage units at $3,000 for AT&T, $23,500 for Sprint, and $22,100 for T-Mobile West.  Landmark also submitted a copy of Sound Transit's appraisal of the property as a whole.  Landmark did not provide an appraisal of its own interest in the cell tower.

After the exchange of appraisals,[6] Landmark and CCTMO each moved for summary judgment, seeking an order dismissing the other from the condemnation proceeding.  Both parties alleged the other had no compensable interest in the condemned property.  The court denied both motions.[7]

In March 2021, the arbitrator issued a ruling resolving the lawsuit between Marymoor and Landmark.  The arbitrator determined that Landmark breached its agreement by failing to extinguish the leaseholds encumbering the property.  The arbitrator awarded Marymoor money damages and assigned to Landmark

---

[6] AT&T did not provide its own appraisal and ultimately never sought compensation for its interest.

[7] The court denied Landmark's motion in February 2021 and CCTMO's motion in June 2021.

6

Marymoor's remaining interest, "if any," to the funds in the registry from the condemnation action.

March 2021 passed without an evidentiary hearing despite the parties' earlier stipulated agreement. The parties did not schedule another hearing.

On June 1, 2021, Marymoor formally assigned "any and all" of its residual interest in the property to Landmark. Then, two days later, Landmark moved to disburse $762,000 of the $2 million in the court registry. It argued that the registry held $762,000 more than the appraised interests claimed by the other parties. And it argued that it was entitled to those funds because it "not only has a claim to the monies in the court as the easement owner," but because it also "now owns [Marymoor]'s claims as the owner of the property." According to Landmark, "no party other than [it] has a claim to the excess $762,000[ ] held in the court registry."

CCTMO, Sprint, and T-Mobile West objected, arguing that the court should distribute the remaining funds only after an evidentiary hearing under RCW 8.12.150 and that Landmark had not identified the specific interest for which it requested disbursement. It also argued that Landmark presented no expert opinion on the fair market value of the interest for which it sought a disbursement of funds. The court granted Landmark's motion, disbursing to Landmark $762,000. $1,238,000 remained in the court registry.

The case sat dormant for a year. Then, in July 2022, Sprint and T-Mobile West jointly moved for disbursement. Those parties requested disbursement of $193,000 based on the appraisals of their cell tower lease interests. Landmark

7

objected, arguing that the court could allocate funds only after an evidentiary hearing. Landmark also argued that Sprint and T-Mobile West's cellular leases were not compensable interests. But Landmark agreed that Sprint and T-Mobile West had a combined $45,600 leasehold interest in the storage units. Sprint and T-Mobile West then increased their request for disbursement from $193,000 to $238,600 to account for their storage unit leasehold interests. On August 9, 2022, the court granted the motion and disbursed a total of $238,600 to Sprint and T-Mobile West.

CCTMO then moved for disbursement of funds and set a hearing date of August 31, 2022. CCTMO asked for the remaining $999,400 in the court registry for compensation of its interest based on its appraisal of $1,045,000. Landmark again objected. It disputed the value of CCTMO's interest, argued that the court should appropriate funds only after an evidentiary hearing, and asserted that it was the only party remaining with a compensable interest in the property.

On August 25, five days before CCTMO's hearing, Landmark cross moved for disbursement of the remaining funds in the registry. In support of its cross motion, Landmark submitted a declaration from its chief financial officer valuing its "real property interests" at $1,041,985. CCTMO moved to strike Landmark's cross motion and declaration, arguing they were untimely under King County Local Civil Rule (KCLCR) 7(b)(4)(A).

The court granted CCTMO's motion and ordered disbursement of the remaining funds in the court registry to CCTMO. The court struck Landmark's cross motion because it was not properly noted under the local court rules. And

8

No. 84466-1-I/9

it struck Landmark's chief financial officer's valuation of its interest because Landmark presented the declaration almost two years after the deadline to exchange appraisals and the close of discovery.

Landmark appeals.

ANALYSIS

Landmark argues that CCTMO, Sprint, and T-Mobile West were judicially estopped from moving for disbursement of funds from the court registry, and that even if they were not, the trial court did not follow the proper statutory procedures. Landmark also asserts the court erred by striking its cross motion for disbursement and supporting declaration. We disagree.

1. Judicial Estoppel

Landmark argues that CCTMO, Sprint, and T-Mobile West were judicially estopped from seeking disbursement of funds from the court registry without an evidentiary hearing. It asserts it "reasonably relied" on the parties' stipulated order to strike the trial date and set a post-trial briefing schedule, including an evidentiary hearing. CCTMO contends Landmark waived that argument because it did not raise judicial estoppel before the trial court.

Generally, we will not consider issues raised for the first time on appeal. RAP 2.5(a). This rule encourages " 'the efficient use of judicial resources' . . . by ensuring that the trial court has the opportunity to correct any errors, thereby avoiding unnecessary appeals." State v. Robinson, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011) (quoting State v. Scott, 110 Wn.2d 682, 685, 757 P.2d 492

9

No. 84466-1-I/10

(1988)).  Landmark did not raise judicial estoppel below, so it waived that argument on appeal.

In any event, judicial estoppel does not apply here.  Judicial estoppel is an equitable doctrine that " 'precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.' "  Arp v. Riley, 192 Wn. App. 85, 91, 366 P.3d 946 (2015)[8] (quoting Arkinson v. Ethan Allen, Inc., 160 Wn.2d 535, 538, 160 P.3d 13 (2007)).  The doctrine's primary purposes are to (1) preserve respect for judicial proceedings and (2) avoid inconsistency, duplicity, and waste of time.  Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 861, 281 P.3d 289 (2012).  It is intended to protect the integrity of the courts, not the litigants.  Arp, 192 Wn. App. at 91.

In determining whether judicial estoppel applies, we look to see if (1) the party asserts a position inconsistent with one made in an earlier proceeding, (2) acceptance of the position would create the perception that a party misled a court in either proceeding, and (3) the party asserting the inconsistent position would derive an unfair advantage or impose an unfair detriment.  Arp, 192 Wn. App. at 92.  But "judicial estoppel does not apply absent a prior judicial proceeding in which the alleged inconsistent position was taken."[9]  Kellar v. Est. of Kellar, 172

---

[8] Internal quotation marks omitted.

[9] An exception to this rule is when a party offers evidence that is "inconsistent with 'sworn testimony the party has given in the same or prior judicial proceedings.' " Anfinson, 174 Wn.2d at 864 (quoting King v. Clodfelter, 10 Wn. App. 514, 519 P.2d 206 (1974), abrogated on other grounds by Anfinson, 174 Wn.2d at 865).  Landmark does not allege that CCTMO, Sprint, or T-Mobile West offered evidence inconsistent with their prior sworn testimony.

No. 84466-1-I/11

Wn. App. 562, 581, 291 P.3d 906 (2012).

Landmark seeks to estop CCTMO, Sprint, and T-Mobile West from taking a position contrary to the one they expressed in their stipulated order. But the court entered the stipulated order in the same judicial proceeding. So, the court was aware of the order and could assess the parties' positions without risk of being misled.[10] As a result, the doctrine does not apply.

2. Disbursement Procedure

Landmark argues that even if CCTMO, Sprint, and T-Mobile West were not estopped from seeking disbursement of funds without a hearing, the court used an unlawful and inequitable procedure to distribute the money. Landmark contends that under chapter 8.12 RCW, it was entitled to "separate trials to resolve factual disputes regarding the total value of the condemned property" and "the value of the competing interests in the property from which that total value is derived."

We interpret statutes de novo. Robertson v. Wash. Parks & Recreation Comm'n, 135 Wn. App. 1, 5, 145 P.3d 379 (2005). In interpreting a statute, we aim to determine and carry out the legislature's intent. Id. If the statute's meaning is plain on its face, we must give effect to that plain meaning. Id. We derive a statute's plain meaning from the language of the statute as a whole and the related statutes that reveal legislative intent about the specific provision at issue. Id.; Pub. Util. Dist. No. 2 of Pac. County v. Comcast of Wash. IV, Inc., 8

---

[10] We note that the parties did set a briefing schedule and scheduled an evidentiary hearing for March 2021 consistent with the order. But Landmark let that date pass without rescheduling the hearing.

No. 84466-1-I/12

Wn. App. 2d 418, 450, 438 P.3d 1212 (2019). If the plain language of the statute is subject to only one reasonable interpretation, our inquiry ends. Cito v. Rios, 3 Wn. App. 2d 748, 759, 418 P.3d 811 (2018).

We review a trial court's application of a statute for an abuse of discretion. See Dix v. ICT Grp., Inc., 160 Wn.2d 826, 833, 161 P.3d 1016 (2007) (a court abuses its discretion when it enters a ruling based on an erroneous view of the law). And we review a trial court's exercise of its broad authority to fashion an equitable remedy for an abuse of discretion. SAC Downtown Ltd. P'ship v. Kahn, 123 Wn.2d 197, 204, 867 P.2d 605 (1994). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. O'Neill v. City of Shoreline, 183 Wn. App. 15, 21, 332 P.3d 1099 (2014). A court rests a discretionary decision on untenable grounds or bases it on untenable reasons if it relies on unsupported facts or applies the wrong legal standard. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006). The court's decision is manifestly unreasonable if " 'the court, despite applying the correct legal standard to the supported facts, adopts a view that no reasonable person would take.' " Id.[11] (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

Chapter 8.12 RCW establishes the procedures for condemnation proceedings initiated by a city.[12] Pub. Util. Dist. No. 2 of Grant County v. N. Am.

---

[11] Internal quotation marks omitted.

[12] Sprint and T-Mobile West moved for disbursement of funds under chapter 8.04 RCW, the statutes governing eminent domain actions by the State. But on appeal, the parties agree that chapter 8.12 RCW governs here.

12

No. 84466-1-I/13

Foreign Trade Zone Indus., LLC, 159 Wn.2d 555, 567, 151 P.3d 176 (2007).

After a city petitions in eminent domain and the court determines the taking is for a public use, the court must hold a trial to determine just compensation. RCW 8.12.050. The court "shall impanel a jury to ascertain the just compensation to be paid for the property taken or damaged" as a whole.[13] RCW 8.12.100. Where there are separate interests in the property, and "if any defendant or party in interest shall demand," the court may impanel separate juries "as to the compensation or damages to be paid to any one or more of such defendants or parties in interest," so long as the party is "first admitted as a party defendant." Id.; RCW 8.12.120. The jury must then "ascertain the just compensation to be paid to any [party] claiming an interest" in the condemned property. RCW 8.12.120.

Here, Sound Transit and Marymoor agreed in the May 2020 Stipulated Judgment and Decree of Appropriation that Sound Transit would pay $16.65 million as just compensation for the property as a whole. Landmark did not contest the stipulated judgment. Nor did it object to the disbursement of $14.65 million to Marymoor as just compensation for its interest. Indeed, in the July 2020 stipulated order to strike the trial date, Landmark agreed with Marymoor, CCTMO, Sprint, and T-Mobile West that "[o]nly the allocation of the Reserved Funds remains to [be] determined in this action." And Landmark did not demand a trial to determine the value of its separate interest as provided for in RCW 8.12.100 and .120. Instead, it agreed that "allocation of the [$2 million] in

---

[13] The parties may waive a trial by jury "as in other civil cases" and have the matter heard by the court. RCW 8.12.090.

Reserved Funds can take place via post-trial motions . . . pursuant to an agreed schedule." As a result, Landmark waived its right to trials to establish just compensation for the property as a whole and its separate interest.

Landmark argues that even if it was not entitled to a trial, the court still should have determined by some means the extent and value of each parties' separate interest in the property before distributing any of the funds. Citing State v. Spencer, 90 Wn.2d 415, 583 P.2d 1201 (1978), Landmark contends that if, as here, the funds fall short of fully compensating each parties' appraised interest, the court must ensure that each party receives a proportional share of the remaining funds. According to Landmark, the trial court used an inequitable procedure because it precluded Landmark from compensation for any of its leasehold interests.

In Spencer, the State condemned 2.6 acres owned by Elmer and Alice Spencer, part of which was subject to a lease held by Socony Mobil Oil Company. 90 Wn.2d at 416. The Spencers and Socony entered a stipulated judgment and decree of appropriation under which the State paid $393,500 as just compensation for all interests in the property. Id. at 417. At trial, Socony urged the court to value its and the Spencers' interests and then equitably apportion each a share of the condemnation award. Id. The trial court refused. Id. Instead, it awarded Socony $75,033, the amount it found to be the fair market value of the leasehold. Id. The court then awarded the remaining funds to the Spencers. Id. We reversed, concluding that the trial court should have equitably apportioned the funds. Id.; State v. Spencer, 16 Wn. App. 841, 844-45, 559 P.2d

1360 (1977). Our Supreme Court affirmed, holding that courts have both statutory and equitable authority to apportion damages in condemnation proceedings, and an equitable apportionment of the lump-sum condemnation award was appropriate "under the applicable statute and the facts and circumstances of [the] case." Id. at 419.

Contrary to Landmark's argument, Spencer does not mandate a particular procedure trial courts must follow to disburse funds in condemnation proceedings. Instead, it recognizes a court should use its discretion, guided by statutory and equitable authority, to resolve conflicting claims and apportion just compensation in a manner called for by the facts and circumstances of each case.

Here, RCW 8.12.150 provides that "[n]o delay in ascertaining the amount of compensation shall be occasioned by any doubt or contest which may arise . . . as to the extent of the interest of any defendant in the property." After the court establishes the total value of the condemned property, it may "require adverse claimants to interplead, so as to fully determine their rights and interests in the compensation ascertained."[14] Id. And it "may make such order as may be necessary in regard to the deposit or payment of such compensation." Id. The plain language of the statute affords the court broad equitable authority to resolve

---

[14] Interpleading is an equitable action in which multiple claimants to the same money or property can have their claims "adjudged, determined, and adjusted" as described in RCW 4.08.160. See Smith v. Dement Bros. Co., 100 Wash. 139, 139-40, 144-45, 170 P. 555 (1918) (quoting REM. REV. STAT. § 199, recodified as RCW 4.08.160 (LAWS OF 1890, at 93, § 1)). In an interpleader action, the court may make all necessary orders "for the preservation and protection of the rights, interests, or liens of the several parties." RCW 4.08.180.

No. 84466-1-I/16

disputed interests in condemned property and disburse funds accordingly. <u>See,</u>
<u>e.g.</u>, <u>City of Tacoma v. Nyman</u>, 154 Wash. 154, 157, 281 P. 484 (1929) (holding
that the trial court properly resolved contested interests under Rem. Rev. Stat. §
9225, <u>recodified</u> <u>as</u> RCW 8.12.150 (LAWS OF 1907, ch. 153, § 11), because its
procedure "opened the way for doing justice between the contending parties").

The procedure employed by the court to disburse funds to CCTMO,
Sprint, and T-Mobile West was tenable under the circumstances of this case.
After the court's disbursement to Landmark, the case lay dormant for a year.
Then, in July 2022, Sprint and T-Mobile West jointly moved for disbursement.
Those parties requested disbursement of $193,000 based on the appraisals of
their cell tower lease interests. The trial court received and considered briefing
from all interested parties. In its brief, Landmark argued the other parties had no
compensable interest in the cell tower. The court rejected that argument.
Instead, the court disbursed the funds consistent with Sprint, T-Mobile West, and
eventually CCTMO's undisputed appraised values of their respective leasehold
interests.[15]

Landmark also fails to show that the court's procedure deprived it of any
compensation for its leasehold interest. Indeed, Landmark received a $762,000
disbursement for its interests. While Landmark now argues that the

---

[15] Landmark challenges the trial court's finding that the appraisals were
undisputed. But the record shows that Landmark submitted no competing appraisals of
the other parties' interests. Landmark also complains that it had no opportunity to
challenge whether the other parties' appraisers "followed sound appraisal practices"
before the court accepted their appraised values. But the record shows that Landmark
received the appraisals before the November 2020 deadline and made no effort to
depose the other parties' experts over the next two years.

16

No. 84466-1-I/17

disbursement was compensation for only its ownership interest received from Marymoor, neither its motion to disburse nor the trial court's order of disbursement identify those funds as such.

Under the circumstances of this case, the procedure the trial court used to determine the value of the parties' separate interests and disburse funds does not amount to an abuse of discretion.

3. <u>Cross Motion to Disburse Funds</u>

Landmark argues that the trial court erred by striking its cross motion for disbursement and supporting declaration. We review a trial court's ruling on a motion to strike for an abuse of discretion. <u>Farmer v. Davis</u>, 161 Wn. App. 420, 431, 250 P.3d 138 (2011).

Under KCLCR 7(b)(4)(A), a moving party "shall serve and file all motion documents no later than 4:30 p.m. nine judicial days before the date the party wishes the motion to be considered." A party can request that timing requirement "be shortened only for good cause [and] upon written application to the court." KCLCR 7(b)(10)(A).

Landmark cross moved for disbursement five judicial days before the hearing date of CCTMO's motion to disburse. As a result, Landmark's cross motion was untimely under the local rules. And Landmark did not seek to show good cause to shorten time under KCLCR 7(b)(10)(A). The trial court did not abuse its discretion by enforcing the applicable court rules.[16]

---

[16] Even if the court found good cause for the late filing of Landmark's cross motion, Landmark submitted the supporting declaration appraising the value of its interest almost two years after the November 2020 deadline to exchange appraisals. The trial court correctly identified this as an independent basis to exclude that document.

In sum, CCTMO, Sprint, and T-Mobile West were not estopped from seeking disbursement of just compensation funds from the court registry without a hearing, and the trial court did not use an unlawful or inequitable procedure to disburse the funds.  We affirm.

WE CONCUR: