[No. 13924.   Department One.   June 18, 1917.]

H. S. GRIFFITH et al., Appellants, v. CHARLES GIFFORD et al.,
Respondents.[1]

VENDOR AND PURCHASER—RESCISSION BY VENDEE—MISREPRESENTA-
TIONS.   Falsely representing that there was no snapdragon on a
farm is ground for rescission, where it appears that it is a noxious
weed practically impossible to eradicate and that there were several
large patches of it, materially reducing the value of the farm.

SAME—MISREPRESENTATIONS — EVIDENCE — SUFFICIENCY.   The evi-
dence sufficiently establishes false representations by the vendor that
there was no snapdragon on a farm, where it appears that he knew
the weed, shocked oats over the patches of snapdragon on the farm,
and stated that there was none to his knowledge, and the vendees
testified that they made inquiry of the vendor, who represented
there was none on the place.

Appeal from a judgment of the superior court for Spokane
county, Huneke, J., entered September 16, 1916, in favor of
the defendants, in an action for rescission, tried to the court.
Reversed.

*Zent & Powell*, for appellants.

MAIN, J.—This action was brought to rescind a contract
for the purchase of real estate on the ground of fraud.   The
trial in the superior court resulted in a judgment denying
rescission, from which the plaintiffs appeal.

The facts out of which the litigation arose are these:   For
some time prior to the month of March, 1916, the appellants
had owned and occupied a farm in Grant county, which they
had sold a short time prior to entering into the transaction
out of which this controversy arose.   After selling the farm in
Grant county, Mr. Griffith, in looking about for the purchase
of another place, came to Latah, in Spokane county.   This
was in what is referred to in the evidence as the "Palouse
country."   After coming to Latah, he met friends there who

[1]Reported in 165 Pac. 874.

warned him against purchasing a farm upon which there was any "wild snapdragon." After being so warned, he fully made up his mind not to purchase a farm if there was growing thereon any of that weed.

A few days after coming to Latah, Griffith was taken by one J. S. Farrelly, who lived in or near that town, six miles into the country to look at a place then owned by the respondents. Two or three days after having made this trip, Griffith met the respondent Charles Gifford in Latah and talked with him relative to the farm. During this conversation, Farrelly asked Gifford if there was any snapdragon on the farm, and received the reply, "Not to my knowledge." Shortly after this conversation, or within a few days, Gifford took Mr. and Mrs. Griffith out to see the farm, and, as the Griffiths both testified, while they were driving along the highway adjacent thereto, they inquired whether there was any snapdragon on the place, and received the positive answer that there was not. Gifford denies this conversation. Upon this trip, the parties did not go over the place, but a few days later, Gifford and Griffith again visited the farm and walked over it. The place had been owned by the respondents for seven years prior to this time, and had been occupied by them during all of that time, with the exception of one year. The negotiations referred to resulted in a contract on March 30, 1916, by which the respondents sold to the appellants the farm, consisting of approximately seventy acres, for the sum of $8,300. Of this sum, $1,780 was paid in cash, and the balance was to be paid by the transfer of notes and a mortgage then owned by the appellants.

After making this contract, and on the 17th day of April, the appellants went into possession of the farm. Thereafter, and on the 28th day of that month, Mr. Griffith, while plowing preparatory to planting a crop, discovered what he thought might be wild snapdragon. He had never seen it before, as it did not grow where he had previously lived and farmed land. After inquiry, Griffith learned that the weed

he had discovered was wild snapdragon.  He then sought Mr.
Gifford and demanded his money back, as well as rescission
of the contract.  This the latter, after considering for a few
days, declined to do.  Thereafter, and during the succeeding
month, the appellants vacated the place and instituted this
action.  Neither party to the controversy being willing to
exercise control over the farm during the litigation, by mutual
arrangement, the management thereof was given to a third
person.

The first question is whether the presence of wild snap-
dragon upon the farm was of such material consequence as
to justify a rescission of the contract, providing there had
been misrepresentation relative to its existence.  The evidence
shows that wild snapdragon is a noxious weed, and when it
once appears upon a farm it is practically impossible to
eradicate it.  So serious is its presence considered that, when
it appears, some farmers build a fence around it and cover
the ground with salt.  The appellants offered evidence to
the effect that the presence of snapdragon upon a farm
would materially reduce its salable value.  The respondents
offered no evidence on this question.  The amount of snap-
dragon which was discovered upon the place after the appel-
lants went into possession thereof consisted of approximately
ten patches, located near the center of the farm.  These
patches varied in size from about eleven by thirteen feet down
to places where there was only an individual plant.  The
party to whom the management of the place was committed
during the pendency of this litigation testified that he had
covered the three larger patches with tar paper, and that
it took about two hundred and fifty square feet thereof.  One
of the witnesses, testifying for the respondents, referred to a
patch of snapdragon six feet across as "quite a large patch."
Taking into consideration the character of the weed and the
difficulty, if not the impossibility, of its total extinguishment,
as well as the size and number of patches, together with
the fact that the presence of such weed will materially reduce

the value of a farm, we cannot hold that a misrepresentation relative thereto would be upon an immaterial matter such as would not justify the rescission of a contract.

The next question is whether there was a misrepresentation. The trial court made no formal findings of fact and conclusions of law, but recited in the judgment that wild snapdragon was growing upon the farm in the fall of the year 1915. The evidence shows that this weed has a distinctive flower and a pronounced odor, especially when cut or bruised. During the year 1915, the portion of the farm where the snapdragon was produced a crop of oats. When this crop was harvested, Mr. Gifford testified that he shocked the oats, and admitted that he shocked the oats over the very place where the snapdragon was found by Griffith. The stubs from which the plant had been cut, along with the oats, were still on the ground during the following spring. If Griffith, who had never seen snapdragon before moving upon this farm, was able to discover its presence there within twelve days after he took possession, and at a time of year when its discovery would be much more difficult than when the flower would appear later in the season, it does seem strange that its presence there was not known to the former owner, who admitted that he knew what snapdragon was when he saw it. The testimony of the Griffiths on the one side, and Gifford on the other, as to the conversation relative to snapdragon, hereinbefore referred to, cannot be reconciled. It might be said that a way of reconciliation could be found by assuming that the Griffiths might have confused this conversation with the previous conversation occurring in Latah, where Gifford admits that he stated that there was no snapdragon upon the place to his knowledge, but this assumption would overlook the fact that Mrs. Griffith was not present at the previous conversation. It seems altogether reasonable that the Griffiths, after having been warned relative to purchasing a farm with this weed upon it, and after having determined not

to purchase such a farm, should inquire specifically in relation thereto. The trial judge, in seeking to reconcile this conflicting testimony, thought that the Griffiths might have confused the conversation that they testified to as occurring upon the highway adjacent to the farm with the previous conversation in Latah, but doubtless overlooked the fact, as already pointed out, that Mrs. Griffith was not present at that conversation.

We cannot escape the conclusion that, under the evidence in this case, the appellants were entitled to a rescission of the contract. The rule undoubtedly is, as pointed out by the respondents, that fraud, where charged, must be established by clear and convincing evidence, but we think the appellants have met the requirements of this rule.

The judgment will be reversed, and the cause remanded with direction to the superior court to enter a judgment in favor of the appellants.

ELLIS, C. J., CHADWICK, MORRIS, and WEBSTER, JJ., concur.