[No. 4059–II.   Division Two.   January 15, 1982.]

STEPHEN F. RUPERT, *Appellant,* v. DANIEL B. GUNTER, ET AL, *Respondents.*

*Richard E. Goodwin* and *Ingram, Zelasko & Goodwin,* for appellant.

*Jack L. Burtch,* for respondents.

PETRICH, A.C.J.—Stephen F. Rupert sought an injunction against the defendants, Daniel B. and Laurie D. Gunter, asking that they stop hindering his full use and enjoyment of his easement across their property. The court granted him injunctive relief; however, the plaintiff appeals that part of the judgment allowing the defendants to construct a gate at the entrance to plaintiff's easement, not allowing him any money damages, and ordering each side to pay its own costs. The primary issue is whether the owner

of a servient estate subjected to an access easement is forever precluded from imposing any physical restraints along the access road where the original grant was silent as to permitted restraints. We believe the servient owner is entitled to impose reasonable restraints on the right–of–way to avoid a greater burden on the servient owner's estate than that originally contemplated in the easement grant, so long as such restraints do not unreasonably interfere with the dominant owner's use, and, therefore, affirm the judgment below.

The defendants' property, consisting largely of open fields, was purchased on July 17, 1970, and is bisected by a lane running from the county road on the northeast side to the plaintiff's property on the southwest side. Fences border this lane for most of its length. No gates crossed the lane when defendants moved onto the property, but in 1976 they built a gate located approximately at the lane's midpoint where there is a turnoff to defendant's house. The gate's avowed purpose was to prevent the general public from entering and speeding down the lane. Plaintiff purchased his property on June 2, 1978, and the statutory warranty deed contained an express easement, 16 feet in width, which followed the course of the lane over defendants' property.

Due to its weight and awkwardness, the aforementioned gate was difficult to open and close. When defendants placed the gate across the lane, it created a great inconvenience for plaintiff. Defendants also harassed plaintiff in other ways. Occasionally they obstructed his free use of the lane by placing various objects on the lane or by standing in the middle of it. They dug holes in its surface. They yelled and used profane language toward plaintiff's friends who attempted to use the easement. And they made certain threats to plaintiff thereby attempting to curtail his use of the lane. Not surprisingly, plaintiff brought an action against defendants seeking injunctive relief.

Defendants subsequently served plaintiff with interrogatories that inquired, *inter alia,* regarding any expert wit-

ness expected to be called at trial. Not until 2 days prior to trial did the plaintiff inform defendants of his general intent to call an appraiser to the stand. And not until 4 p.m., the day before the trial, did plaintiff specifically make arrangements with Bill Michalak to give expert testimony as an appraiser. Plaintiff can point to no evidence indicating that he had informed defendants of his intention to call Michalak as a witness. At trial, defendants objected when plaintiff called Michalak to the stand, and the trial court struck his testimony because plaintiff had not complied with CR 26(e)(1).

The court's judgment enjoined defendants from harassing plaintiff in any way and also forbade defendants from placing a gate across the easement. However, it gave defendants the option of constructing a lightweight aluminum gate, one easy to open and shut, at the entrance of the easement on the county road. The court stated that this gate would control the public's use of the lane, and that its cost would be borne by defendants. The judgment also ordered the parties to pay their own costs.

From this judgment, plaintiff appeals in part. At issue is whether the court abused its discretion in fashioning its equitable remedy.

We point out initially that a suit for an injunction is an equitable proceeding with considerable inherent discretion vested in the trial court. *Tradewell Stores, Inc. v. T.B. & M., Inc.*, 7 Wn. App. 424, 500 P.2d 1290 (1972). The trial court is vested with a broad discretionary power to shape and fashion injunctive relief to fit particular facts, circumstances, and equities of the case before it. 43A C.J.S. *Injunctions* § 235, at 512 (1978). Appellate courts are required to give great weight to the trial court's exercise of discretion in equitable cases; only if that discretion is abused will we interfere with the judgment.

Turning, then, to plaintiff's first contention, we inquire whether the court abused its discretion in allowing defendants to construct a gate across the easement's entrance. Whether or not the owner of land, over which an

easement exists, may erect and maintain fences, bars, or gates across or along an easement way, depends upon the intention of the parties connected with the original creation of the easement, as shown by the circumstances of the case; the nature and situation of the property subject to the easement; and the manner in which the way has been used and occupied. *Evich v. Kovacevich,* 33 Wn.2d 151, 204 P.2d 839 (1949). Similarly, if the easement is ambiguous or even silent on some points, the rules of construction call for examination of the situation of the property, the parties, and surrounding circumstances. *Seattle v. Nazarenus,* 60 Wn.2d 657, 374 P.2d 1014 (1962).

Here, the original grant of the easement for ingress and egress did not state whether defendants could erect a gate across it. The court, however, was cognizant that the public occasionally drove off the county road and onto the lane in order to get closer to the Wishkah River. It was also apparent that the lane ran close to defendants' house, that cars would sometimes speed down the lane, and that defendants' children sometimes played in or near the lane. On the other hand, it was clear that the easement was plaintiff's only means of access to the county road and that even a lightweight gate would cause some inconvenience to anyone who had to open and shut it on a daily basis.

When the owner of a servient estate is being subjected to a greater burden than that originally contemplated by the easement grant, the servient owner has the right to restrict such use and to maintain gates in a reasonable fashion necessary for his protection, as long as such gates do not unreasonably interfere with the dominant owner's use. *See United States v. Johnson,* 4 F. Supp. 77 (W.D. Wash. 1933). *See also* 28 C.J.S. *Easements* § 98(b), at 781 (1941). Presumably, the parties to the original easement did not intend for the public to speed along the easement way. Also, given the physical situation of the property and the attending circumstances, the proposed gate would hinder the general public from driving down the lane, make speeding less likely, and serve to protect defendants and

their children from speeding cars.

The final inquiry is whether the proposed gate would unreasonably interfere with plaintiff's use of his easement. We point out that the trial court conditioned the gate's construction upon the following prerequisites, *inter alia*: (1) It shall be a 16–foot light aluminum gate, (2) constructed so that *anyone* can open and close it *easily,* (3) and constructed so that it can be opened and fastened in either direction, and (4) defendant shall pay all construction costs. Because any gate must strictly comply with these conditions, we conclude that there would be no unreasonable interference. Thus, we hold that the trial court did not abuse its discretion in allowing defendants the option of building a gate as part of its equitable remedy.

Plaintiff also contends that the court erred in not awarding him any damages because of a decline in his property's value due to defendants' right to build a gate. Assuming that the gate, when built, would only create a reasonable interference with plaintiff's use of the easement, and assuming that the gate was necessary for the preservation and protection of the servient estate, any damage award to plaintiff would be inappropriate. Moreover, the record does not indicate that the court abused its discretion in failing to find damages due to defendants' right to construct a gate in futuro.

Plaintiff's further contention, that the court improperly applied CR 26(e)(1) in excluding Michalak's testimony, is without merit. CR 26(e)(1) placed upon plaintiff a duty to seasonably supplement his response to interrogatories regarding each person expected to be called at trial as an expert witness. Plaintiff's telephone conversation with defendants indicating his general intent to obtain an appraiser 2 days before trial falls far short of the above requirement. Thus, the exclusion of Michalak's testimony was an appropriate response by the trial court as per CR 26(e)(4).

Finally, pointing to RCW 4.84.030, plaintiff contends

that, because he prevailed in the underlying action, the court erred in ruling that each side should pay its own costs. However, the rule is well settled that the allowance of costs in an action in equity rests in the court's discretion. *See State v. Northwest Magnesite Co.*, 28 Wn.2d 1, 182 P.2d 643 (1947); *Repanich v. Columbia & N. Fishing & Packing Co.*, 135 Wash. 429, 237 P. 1012 (1925); *Weiffenbach v. Puget Sound Bridge & Dredging Co.*, 108 Wash. 455, 184 P. 321 (1919). After reviewing the record on file, we cannot say the court abused its discretion in so allocating the costs.

Judgment is affirmed.

PEARSON and PETRIE, JJ., concur.