20 P.3d 500 (2001)
Aron L. LOWE and Denise Lowe, husband and wife, and the marital community comprised thereof, Appellants,
v.
DOUBLE L PROPERTIES, INC. a Washington corporation, David L. Nibarger, as President; Paul L. Nibarger, as Vice-President; and Julie Norris, as Secretary, individually, Respondents.
No. 17583-9-III.
Court of Appeals of Washington, Division 3, Panel Eight.
April 3, 2001.
As Amended on Grant of Reconsideration May 22, 2001.
*502 Thomas M. Roberts, Roberts & Mahoney, Spokane, for Appellants.
Stephen R. Matthews, Donald C. Brockett, Phillabaum, Ledlin, Matthews & Gaffney-Brown, Spokane, for Respondents.
*501 BROWN, J.
Double L Properties, Inc., the servient estate holder, erected gates across Aaron L. and Denise S. Lowe's ingress and egress easement acquired by default judgment. Mr. Lowe sought injunctive relief. The trial court permitted the gates, restricted maintenance, and imposed speed limits. The Lowes appeal. We clarify the difference between intended and imposed easements. We decide the trial court did not err when ruling that the servient estate holder could increase its use of gates over the easement to control livestock. On the other hand, the trial court abused its discretion when ordering the maintenance. And we remand the speed limit issue for entry of additional findings.

FACTS
Double L, controlled by the Nibarger family, used to own Lookout Mountain. The Lowes purchased it at a bankruptcy sale. Double L owns much of the surrounding property and operates a working horse and cattle ranch. The Lowes, by default, acquired an easement by necessity for ingress and egress through the Double L property over an existing gravel road, over which certain non-party entities also had an easement.
A heavy front gate existed on the easement. Eventually, Double L erected three more gates (2, 3, and 4) across the easement. Some were constructed of barbed wire and were very difficult to open. Mrs. Lowe needed help to open some of them. In the winter, Mrs. Lowe had particular difficulty passing through gate 4, the upper gate dividing the two properties. At times, the Lowes did not close gates 2, 3, and 4, allowing Double L stock to wander within a Double L perimeter fence. Once, the Nibarger family blocked the easement and attempted to intimidate the Lowes for their failure to close the gates. Mr. Lowe at times drove more than 10 mph on the easement, particularly in front of the Nibarger barn and house.
In June 1994, Mr. Lowe filed an amended complaint in the default case asking for damages and injunctive relief. Mr. Lowe partly demanded removal of the three new gates and requested an order permitting him to "maintain, re-grade, and/or snowplow" the easement when he determined it necessary. Clerk's Papers (CP) at 15. The trial court granted Mr. Lowe summary judgment (unappealed) on the road maintenance issue, stating "[t]hat the Lowes be entitled to maintain, regrade and snowplow their easement at their expense without interference from defendants." CP at 18. The trial court denied summary judgment on the gates after finding material fact issues existed as to whether the gates unreasonably interfered with the easement. Double L was ordered to "adjust the barbed wire gates so that anyone can easily open them including Mrs. Lowe and their children." CP at 18. Double L eventually filed an amended counterclaim that partly demanded a judgment restricting the Lowes' easement "to ingress and egress over the existing roadway" and entitling Double L "to maintain gates to properly secure and operate their ranching property[.]" CP at 30.
A bench trial occurred in July and October 1996, including a view of the easement. In May 1998, the trial court entered findings, conclusions, and a judgment. The trial court found "a need for gates to manage the animals." Finding of Fact (FF) 10. But the *503 court found also that Double L "acted unreasonably at times." FF 15. The trial court allowed gates 1, 2, and 3 to remain, but ordered a number of modifications to permit easier passage and to improve safety. The trial court ordered Double L to notify the Lowes when gate 2 should be closed or left open. The trial court allowed a cattle guard installed by the Lowes to replace gate 4. The trial court further ordered Double L to give 60-day written notice to the Lowes whenever it wanted to install more gates across the easement.
Additionally, the Lowes were ordered to "follow reasonable speed restrictions placed upon the roadway by Nibargers." Conclusion of Law (CL) 11. The court mandated a 10 mph speed limit from gate 1 to gate 2 and a 20 mph limit from gate 2 to gate 4. The trial court recognized that weather conditions might require greater speed to ascend the easement. The court further ordered the Lowes to obtain permission from Double L "before conducting significant maintenance on the roadway." CL 12.
The Lowes appeal. Double L has abandoned its cross-appeal.

ANALYSIS

A. Gates
The issue is whether the trial court erred by abusing its discretion in permitting Double L, the servient estate holder, to increase and alter the gates across the easement. Because of subsequent circumstances, solely gate 2 remains at issue.
The trial court entered injunctive relief. "A suit for an injunction is an equitable proceeding addressed to the sound discretion of the trial court, to be exercised according to the circumstances of each case." Steury v. Johnson, 90 Wash.App. 401, 405, 957 P.2d 772 (1998) (citing Federal Way Family Physicians, Inc. v. Tacoma Stands Up For Life, 106 Wash.2d 261, 264, 721 P.2d 946 (1986); Rupert v. Gunter, 31 Wash.App. 27, 30, 640 P.2d 36 (1982)). "Appellate courts must give great weight to the trial court's decision, interfering only if it is based on untenable grounds, is manifestly unreasonable or is arbitrary." Steury, 90 Wash.App. at 405, 957 P.2d 772 (citing Federal Way, 106 Wash.2d at 264, 721 P.2d 946; Rupert, 31 Wash.App. at 30, 640 P.2d 36). This standard of review applies throughout this opinion.
Here, the trial court entered 19 findings of fact without challenge. Accordingly, they are verities on appeal. See Green v.. Lupo, 32 Wash.App. 318, 322-23, 647 P.2d 51 (1982) (construing easement grant).
"Whether or not the owner of land, over which an easement exists, may erect and maintain fences, bars, or gates across or along an easement way, depends upon the intention of the parties connected with the original creation of the easement, as shown by the circumstances of the case; the nature and situation of the property subject to the easement; and the manner in which the way has been used and occupied."
Rupert, 31 Wash.App. at 30-31, 640 P.2d 36 (citing Evich v. Kovacevich, 33 Wash.2d 151, 204 P.2d 839 (1949)). "Similarly, if the easement is ambiguous or even silent on some points, the rules of construction call for examination of the situation of the property, the parties, and surrounding circumstances." Rupert, 31 Wash.App. at 31, 640 P.2d 36 (citing City of Seattle v. Nazarenus, 60 Wash.2d 657, 374 P.2d 1014 (1962)). "When the owner of a servient estate is being subjected to a greater burden than that originally contemplated by the easement grant, the servient owner has the right to restrict such use and to maintain gates in a reasonable fashion necessary for his protection, as long as such gates do not unreasonably interfere with the dominant owner's use." Rupert, 31 Wash.App. at 31, 640 P.2d 36 (citing United States v. Johnson, 4 F.Supp. 77 (W.D.Wash. 1933); 28 C.J.S. Easements § 98(b), at 781 (1941)); accord Steury, 90 Wash.App. at 406, 957 P.2d 772; Green, 32 Wash.App. at 324, 647 P.2d 51.
Thus generally, the dominant estate holder may increase an existing intended or imposed use, but may not compel a change in use on the servient estate holder. The inverse follows; the servient estate holder may not interfere with a mere increase in *504 use, but may properly resist any attempted change in use by the dominant estate holder.
Here, Double L did not "grant" the easement; no intent is involved. Instead, we have an imposed use arising from a default judgment for an easement by necessity. Double L's response admittedly has been to restrict Mr. Lowe's access "as much as possible." Given the circumstances attendant when the easement was imposed, the trial court did not err by balancing the respective interests to fashion an appropriate remedy. Rupert, 31 Wash.App. at 31, 640 P.2d 36. The trial court considered ample evidence, visited the scene, and entered undisputed findings. The Lowes knew Double L was a working ranch when imposing the easement and knew Double L needed gates to control its livestock. The use of a gate was a known type of limit on the easement; adding necessary gates did not constitute a change but merely the increased use of a known limitation. Therefore, the court did not abuse its discretion in deciding the gates were necessary to control the livestock. Rupert, 31 Wash.App. at 32, 640 P.2d 36.
On the other hand, the gates were quite difficult to open and hazardous in certain conditions to operate. Double L intimidated the Lowes and once physically blocked their access. From these facts, the trial court did not abuse its equitable discretion in deciding Double L had acted unreasonably at times and that the gates, albeit necessary for livestock control, needed modification to allow the imposed use, ingress and egress. Id.
Mr. Lowe, relying on out-of-state authorities, extensively argued here and below that cattle guards would be a less restrictive alternative to gates. See, e.g., Craig v. Kennedy, 202 Va. 654, 119 S.E.2d 320, 322 (1961) (holding servient landowner could install unlocked gate but dominant owner could also replace gate with cattle guard). Although the trial court ordered a cattle guard at gate 4, it rejected the idea at gate 2 deciding instead that a modified gate should remain at that location. Reasonable minds could certainly differ whether a cattle guard or gate is preferable at gate 2, but this court defers to the fact-finder's determinations on the evidence. See Hilltop Terrace Homeowner's Ass'n v. Island County, 126 Wash.2d 22, 34, 891 P.2d 29 (1995).
Given the evidence available to the trial court and the broad latitude given it in fashioning an equitable remedy, we conclude the trial court did not abuse its discretion by allowing gate 2 to remain as a livestock control measure. Rupert, 31 Wash.App. at 32, 640 P.2d 36.

B. Maintenance
The issue is whether the trial court erred by abusing its discretion when conditioning the Lowes' ability to maintain their easement upon permission from Double L before conducting "significant maintenance." CL 12.
Double L resisted Mr. Lowe's attempts to maintain the easement alleging gravel was harmful to horses' hooves. However, in 1994, the trial court granted partial summary judgment to Mr. Lowe, allowing him to maintain the road as needed without interference from Double L. Double L did not appeal. Logically, that should have ended this dispute. Nevertheless, in 1998, the trial court added the limit that Mr. Lowe gain "permission" from Double L prior to conducting "significant maintenance." CL 12. Double L contends the trial court merely required Mr. Lowe to "notify" it before conducting maintenance. However, the trial court stated that Mr. Lowe is to obtain "permission" from Double L before undertaking significant maintenance. CL 12.
In sum, the unappealed summary judgment became res judicata as to the Lowe's maintenance rights. See W.G. Platts, Inc. v. Wendt, 70 Wash.2d 561, 565, 424 P.2d 629 (1967). Here, the court, acting on its own initiative, abused its discretion by modifying the earlier judgment to require Mr. Lowe to obtain permission from Double L before conducting maintenance on the easement. The servient estate holder's ability to limit the dominant estate holder's existing maintenance rights was changed. Moreover, the court did not enter findings supporting its conclusion on this issue. See, e.g., Keyes v. Bollinger, 27 Wash.App. 755, 760, 621 P.2d 168 (1980) (remand necessary due to disparity *505 in findings and conclusions); Baldus v. Bank of Cal., 12 Wash.App. 621, 634, 530 P.2d 1350 (1975) (reversal required due to findings not supporting conclusions).

C. Speed Limits
The issue is whether the trial court erred by abusing its discretion when imposing speed limits on the easement.
Double L failed to plead any need for speed limits. Nevertheless, the court took evidence on this point. At times, Mr. Lowe drove more than 10 mph on the easement, "particularly in front of the Nibarger barn and the house." FF 12. But, no other findings exist to justify imposition of speed limits.
Because the lack of material findings hinders meaningful review, remand is necessary for entry of additional findings. Bowman v. Webster, 42 Wash.2d 129, 134-36, 253 P.2d 934 (1953).

CONCLUSION
We hold the trial court did not err by allowing expanded use of gates and less intrusive alternatives, but did err when ordering maintenance and speed limitations.
Affirmed in part. Reversed in part.
We Concur: KURTZ, C.J., and SWEENEY, J.