# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JAMES KRELL and MARCIA KRELL, husband and wife and their marital community, | No. 60518-0-II |
| Respondents/Cross Appellants, | |
| v. | UNPUBLISHED OPINION |
| KIRK BOYS and KIM BOYS, husband and wife, | |
| Appellants/Cross Respondents. | |
| and | |
| PORT LUDLOW TOWNHOME ASSOCIATION (PLTHA), and entity formed under the laws of the State of Washington, | |
| Defendants. | |

CHE, J. — This appeal and cross-appeal follow the trial court's resolution of a private easement dispute. Kirk Boys and Kim Boys (the Boys) appeal the trial court's denial of their motion for reconsideration of its decision to not award the Boys attorney fees. James Krell and Marcia Krell (the Krells) cross-appeal the trial court's order following a bench trial.

The Krells sued the Boys for interfering with their easement rights over the Boys' courtyard after a gate was installed at the entry to the courtyard. A declaration of covenants, conditions, and restrictions (CC&Rs) provided the Krells with the easement right over the Boys' courtyard and contained a clause about fences and another granting attorney fees and costs to the

prevailing party in litigation involving the construction, enforcement, or interpretation of the CC&Rs.

After a bench trial, the trial court made findings and concluded that the gate did not unreasonably interfere with the Krells' use of their easement and that the Boys did not breach any duty to facilitate the Krells' use of the easement. The trial court dismissed the Krells' complaint against the Boys with prejudice. The trial court also ordered that each party was responsible for their own attorney fees and costs after concluding that the CC&Rs were not necessary in resolving the case. The Boys moved for reconsideration only on the attorney fees issue. The trial court denied the motion.

On appeal, the Boys argue that the trial court erred in denying its motion for reconsideration on attorney fees based on the CC&Rs. The Boys request attorney fees and costs on appeal. On cross-appeal, the Krells challenge the trial court's order entered after the bench trial; specifically, the Krells challenge two of the trial court's findings of fact and the trial court's conclusions that the gate did not unreasonably interfere with the Krells' use of the easement and that the Boys breached no duty to facilitate the Krells' use of the easement.

We hold that (1) the trial court erred in denying the Boys' request for attorney fees below and (2) sufficient evidence supported the trial court's challenged findings of fact and conclusion of law. Accordingly, we reverse the trial court's denial of the Boys' motion for reconsideration and remand to the trial court for further proceedings consistent with this opinion but otherwise affirm the trial courts' findings of fact and conclusions of law. We also grant the Boys' request for attorney fees and costs on appeal and remand to the trial court for determination of an appropriate award.

No. 60518-0-II

FACTS

I.   FACTUAL BACKGROUND

The Boys and the Krells lived in adjoining townhomes on Heron Road in Port Ludlow,

Washington.  The townhomes were both part of the Port Ludlow Village which was governed by

the Ludlow Bay Village Association (LBVA) and also governed by the Port Ludlow Townhome

Association (PLTHA), a separate homeowner's association.  *Krell v. Port Ludlow Townhome*

*Ass'n*, No. 54281-1-II, slip. op. at 3 (Wash. Ct. App. Jan. 19, 2022) (unpublished),

https://www.courts.wa.gov/opinions/pdf/D2%2054281-1-II%20Unpublished%20Opinion.pdf.

Both the LBVA and the PLTHA were governed by CC&Rs.[1]  *Krell*,  slip. op. at 3.

Relevant here and according to the Krells, the CC&Rs included the following provisions:

> Section 4.15  Walls, Fences and Hedges.  Unless constructed by Declarant during initial development of Ludlow Bay Village, no wall, fence or hedge shall be constructed, placed or maintained on any Lot within Ludlow Bay Village.  All walls, fences and hedges within other portions of Ludlow Bay Village shall be subject to prior Architectural Review Committee [(ARC)] approval and shall be in strict compliance with the Ludlow Bay Village Design Standards.
>
> . . . .
>
> Section 6.2  Town Home Association. . . .
>
> . . . .
>
> Section 6.2.2 The rights and obligations of Membership in the Town Home Association shall not be assigned, transferred, pledged, conveyed or alienated in any way except upon conveyance of the Town Home Lots, intestate succession, testamentary disposition, foreclosure or other legal process pursuant to the laws of the State of Washington or the United States.
>
> . . . .
>
> Section 11.1 Lots Subject to Ludlow Maintenance Commission Archi-tectural Review. At all times after conveyance from Declarant or Original

---

[1] The CC&Rs were not admitted as evidence in the proceeding below.  However, in the Krells' statement of remaining causes of actions filed at the trial court's request, the Krells relied upon each of these provisions and attached a copy of the CC&Rs as an exhibit to their statement. Clerk's Papers at 59-60, 64, 71-125 (CC&Rs).

Declarant to any third party except Declarant, the Owners of each Town Home Lot . . . within Ludlow Bay Village shall be subject to Ludlow Maintenance Commission ("LMC") architectural control . . . in addition to architectural control by the [ARC] of the Master Association as set forth below. Prior to seeking approval of the Master Association Committee, the Town Home Lot Owners . . . must obtain approval of their plans and specifications from the LMC Architectural Control Committee. . . .

. . . .

Section 14.3 Access And Use Easements Within The Town Home Lots. Each town home is located on a cluster of several Town Home Lots. An easement is hereby reserved, conveyed and created upon, across and over each Town Home Lot within a cluster of Town Home Lots on which a town home is located, in favor of, and for the benefit of, each Town Home Lot within the cluster and the Owners, Residents, Occupants, tenants, guests and invitees thereof, for purposes of ingress, egress, utilities and use of driveways, walkways and common courtyards, if applicable, adjacent to each town home.

. . . .

Section 19.1 Interpretation Of The Covenants; Attorney Fees and Costs . . . In the event of any arbitration or litigation relating to the amendment, construction, enforcement, or interpretation of [the CC&Rs], the prevailing party shall be entitled to recover from the nonprevailing party the prevailing party's reasonable attorneys' fees and costs, including fees and costs incurred on appeal.

Clerk's Papers (CP) at 97-98, 114, 119, 123; *see also* CP at 83. (Boldface omitted.)

Between the Krells' and Boys' townhomes' entrances and Heron Road was a shared courtyard and a pathway going across the front of the two townhomes and leading to other townhomes. The Boys owned the courtyard, subject to an easement for the Krells' benefit under the CC&Rs. *See Krell*, slip. op. at 3.

When the Krells moved into their townhome in 2014, the courtyard's entrance from the pathway and Heron Road had no gate separating the pathway and the road.

4



Ex. 3, at 5.

Once the Boys moved into their townhome in 2016, the Boys became concerned for the safety of their grandchildren who, at the time, were six, three, and two years old. Because there was no gate between the courtyard and the street, the Boys feared that someone could run out into the street and get hit by a car. Although Heron Road had a ten-mile-an-hour speed limit, the sign was posted up at the top of a hill and the Boys observed people speeding by "constantly." 3 Rep. of Proc. (RP) (Mar. 27, 2024) at 478.

The Boys approached the Krells about installing a gate across the courtyard entrance in order to keep their grandchildren from running out into the street. According to the Boys, when they spoke to the Krells, they thought the Krells gave their approval. According to Kirk Boys, James Krell responded, "Well, I suppose that's okay," when he asked whether they could install

a gate across the courtyard entryway. 3 RP (Mar. 27, 2024) at 484. However, James Krell remembered the conversation differently and recalled telling Kirk Boys that he would discuss the issue with Marcia Krell and get back to them. A few days later, the Boys applied to the ARC to add a "simple, cedar gate" to the courtyard. 1 RP (Mar. 25, 2024) at 8.

The Krells submitted comments in opposition to the application. The Krells identified chronic health issues as creating a hardship if a gate were installed. The Krells asserted that their limited dexterity, joint and balance issues, and periods of dizziness and stiffness made it difficult to open and close gate latches.

The ARC denied the Boys' application. A few days later, the PLTHA applied to the ARC proposing the installation of a gate identical to one at a nearby townhome. The application stated that "[t]his gate installation will complete the standardization of fencing and courtyard entries for building 400." 1 RP (Mar. 25, 2024) at 25; Ex. 7, PDF page 7. The application was eventually approved, subject to a condition, among others, that the installed gate had an Americans with Disabilities Act [(ADA)] approved latch.

A gate was installed that had a latch at the top of the courtyard-side of the gate and an anchor bolt on the bottom of the courtyard-side of the gate.



Ex. 3 at 12.

The Krells appealed the ARC's approval of the application to the LBVA. The LBVA held a hearing on the appeal at which the Krells both testified, and the Boys attended. The LBVA denied the appeal but remanded to the ARC solely for the purpose of determining whether the installed gate was ADA compliant.

Two months after the gate's installation, the original latch was replaced with a homemade, U-shaped piece of metal that pivoted over the top of the gate from one side of the gate and latched into place in a groove on the other side of the gate to stop the gates from swinging open.

 

Ex. 105 at 145, 148.

## II. PROCEDURAL HISTORY

The Krells filed a complaint against the PLTHA and the Boys raising four causes of actions: quiet title against the PLTHA, quiet title against the Boys, declaratory judgment against the Boys and the PLTHA, and "trespass and injunction" against the PLTHA. CP at 162. The Boys and PLTHA moved for summary judgment. *Krell*, slip. op. at 7. The trial court granted the Boys' motion and dismissed the Boys from the action. *Id.* at 8. The trial court granted the PLTHA's motion in part, dismissing the Krells' quiet title action but denying the PLTHA's motion for summary judgment with respect to the declaratory judgment action against the PLTHA. *Id.* at 7-8.

The Boys moved for an award of attorney fees and costs, arguing that Section 19.1 of the CC&Rs authorized an award. *Id.* at 8. The trial court awarded the Boys reasonable attorney fees and costs. *Id.*

The Krells filed an interlocutory appeal to this court. *Id.* On appeal, we affirmed the trial court's dismissal of Krells' quiet title actions against the Boys and the PLTHA. *Id.* at 13. However, we reversed the trial court's dismissal of the Boys as parties in the action, reversed the dismissal of the Boys as to Krells' declaratory action, and reversed the trial court's award of attorney fees and costs to the Boys. *Id.* at 21.

In the decision to reverse the dismissal of the declaratory action against the Boys, we noted that "[s]ubsumed in the Krells' argument that the Boys omitted challenging the installation of the gate by the PLTHA is the notion that the Boys had such a duty." *Id.* at 19. We acknowledged that, as a matter of law, the Boys had a duty to facilitate the Krells' use of the easement; "that is, to facilitate their ingress and egress through the courtyard." *Id.* However, a question of fact remained "whether or not the Boys's omissions in allowing the installation of the gate by the PLTHA constitutes a breach of that duty." *Id.* We accordingly held that "genuine issues of material fact remain as to whether the Boys's omissions to oppose the gate ha[d] created an unreasonable interference with the Krells' easement rights." *Id.* Because the Boys did not prevail on the declaratory action issue and, thus, they were not the singularly prevailing party, we reversed the award of attorney fee and costs below as well as denied the Boys' request for attorney fees on appeal. *Id.* at 20.

9

On remand, the Boys and the Krells stipulated to a change in venue. The trial court then ordered the Krells to provide a statement of their remaining causes of action and claims for relief.

The Krells filed a statement alleging that "[t]he primary claim and dispute in this case is the legality of the gate on the Krell[s'] easement." CP at 57. They alleged that the existence of the easement itself was not in dispute but that the "question at trial is simply whether that burden is reasonable or unreasonable based on the governing law and facts . . . [and] who was/is responsible for the gate, and, thus, who should be responsible for damages and/or attorney fees." CP at 58. The Krells stated, "The applicable law on the issue of the gate's legality and reasonableness is based in both the PLTHA's CC&Rs and with them, the [ADA]." CP at 58. The Krells' explained:

> [S]imply put, the [] Boys are in clear violation of the restrictive covenants their property is subject to. Further, the PLTHA is in violation of its own CC&Rs for its role in applying for and later facilitating the installation of the gate. The [] Boys clearly had constructive notice they were taking their property subject to these agreements and restrictions.

CP at 61.

The Krells stated that they sought declaratory relief to clarify their right to use the easement "without obstruction," permanent removal of the gate, and actual damages. CP at 61. The Krells also requested attorney fees pursuant to Section 19.1 of the CC&Rs.

After the PLTHA successfully moved for summary judgment on the Krells' remaining claim against them, the PLTHA requested reasonable attorney fees and costs under Section 19.1 of the CC&Rs. The trial court granted the PLTHA's request and ordered the Krells to pay the requested attorney fees and costs.

At some point before trial, the Boys moved for summary judgment and the trial court found that the Boys were entitled to summary judgment "on the issue of whether their need to protect their grandchildren from death or serious bodily injury from vehicular traffic constituted a greater burden on [the] Boys . . . than that originally contemplated by the easement grant at issue."[2] CP at 183. The trial court then ordered that the burden of proof shifted to the Krells to demonstrate at trial that the courtyard gate constituted an unreasonable interference with their use of the easement. Suppl. CP at 183. "More specifically, the [Krells] must demonstrate at trial that the presence of the courtyard gate constitutes a greater burden on the [Krells] than the burden on the [Boys] to protect their grandchildren from death or serious bodily injury from vehicular traffic." Suppl. CP at 183.

### III. MARCH 2024 TRIAL

The Krells' remaining claim against the Boys proceeded to a bench trial. Over four days, multiple witnesses testified about the gate, its design, and how it presented when using it, including the Krells, the Boys, a licensed architect specialized in designing housing for those over the age of 50, a doctor who conducted a psychological evaluation on Marcia Krell, neighbors to the Krells, and one of the Boys' daughters. Photographs of the gate with the second latching mechanism were also admitted into evidence.

---

[2] "When the owner of a servient estate is being subjected to a greater burden than that originally contemplated by the easement grant, the servient owner has the right to restrict such use and to maintain gates in a reasonable fashion necessary for his protection, as long as such gates do not unreasonably interfere with the dominant owner's use." *Rupert v. Gunter*, 31 Wn. App. 27, 31, 640 P.2d 36 (1982).

At the time of trial, James Krell was 83 years old, and Marcia Krell was 81 years old. James Krell testified that chronic health conditions caused him to experience pain, dizziness, joint stiffness, mobility issues, extreme tiredness, and frequent, and urgent urination at times. Joint stiffness limited James Krells' dexterity and soreness in his hands and made it difficult for him to grasp things. Balance issues and dizziness made it especially hard to operate the gate due to the two sides of the gate moving and the requirement that one turn around and lock it again when going through it. James Krell testified that trying to pull up the anchor bolt gave him a groin pull that developed into a hernia.

Marcia Krell testified that she was diagnosed with a neurological disorder of the brain that caused her to experience balance problems, loss of fine motor dexterity, gait issues, dizziness, cognitive impairment, severe headaches, and confusion, among other symptoms. According to Marcia Krell, she suffered from symptoms such as dizziness and unsteadiness nearly 50 percent of the time even with medication. When she walked, it felt as if she were walking on a mattress, even if the surface was hard. Marcia Krell felt as if she were bobbing up and down on the water which made it difficult for her to operate the gate latch. Her symptoms also caused her "great difficulty" when operating the gate's latch whenever she was carrying something. 3 RP (Mar. 27, 2024) at 337. Marcia Krell recalled one time when she was trying to get the two gates together. While she was using both hands to pull the gates together, the latch swung down and fell on her hands, bruising her skin.

At the time of trial, the Boys' grandchildren were between thirteen and six years old. The Boys' youngest grandchild was able to use the current gate.

Kim Boys testified that, when they first purchased their townhome, they were concerned about their grandchildren due to the proximity of the road, their observation that no one followed the 10-mile-an-hour speed limit, and their observation that there was a lot of traffic with an inn, hotel, and marina nearby. Kirk Boys echoed Kim Boys' concerns and testified that, ever since they moved in, having the street right outside the courtyard without a gate concerned them because people constantly sped on the road and someone, an adult or a child, could get hit by a car if they walked out and did not stop and look into the street. Kirk Boys noted that, especially during the summertime, traffic on the road could get busy with workers, people coming back from a bar, and people visiting a nearby inn.

The Boys' daughter testified that she visited the Boys' townhome "[a] lot in the summertime" and then once every few months during the other seasons of the year. 4 RP (Mar. 28, 2024) at 520. In 2023, the Boys' daughter visited the Boys' home four to five times. She recalled that, prior to the gate being installed, she felt scared and uneasy when her children would get excited and head toward the door to leave the townhome. She testified that her children's safety was "a huge concern" for her due to their mobility and her observation that Heron Road could get busy and people speeded on the street. 4 RP (Mar. 28, 2024) at 518.

Two neighbors of the Krells, who were familiar with the gate at issue, testified that, while the gate latch was more difficult to use compared to the "regular latch" on their gate, they found the gate easy to use. 3 RP (Mar. 27, 2024) at 424-25.

The trial court entered written findings. It first explained that, following its order on summary judgment, "[t]he issues remaining for resolution at trial [were] whether (1) after balancing the need for the gate against the degree to which it interferes with [the Krells'] use of

13

the easement, the gate constitutes an unreasonable restraint on [the Krells'] easement rights, and

(2) whether [the Boys'] omissions in not opposing the installation of the gate by [the PLTHA]

constitutes a breach by [the Boys] of their duty to facilitate [the Krells'] use of the easement."

CP at 33.

The trial court then found that the gate was reasonably necessary for the protection of the

Boys' grandchildren and that any impact the gate would have on the Krells' use of the easement

was "nominal." CP at 34. It found the gate was "lightweight, with a simple latching

mechanism." CP at 34. According to the trial court, the Krells failed to demonstrate that they

were unable to operate the gate or that operating the gate was difficult. "In fact, [the Krells] have

shown a penchant for opening the gate for no apparent reason other than to open it and leave it

open." CP at 34.

The trial court found that the Krells' testimony regarding the degree of hardship the gate

imposed on them was not credible. It noted that the Krells presented no expert testimony to

confirm any ailments or establish the extent of any dexterity or mobility limitations either had.

The trial court stated:

> during the period from the time of the installation of the gate to the time of trial,
> [the Krells] have been able to operate and work on and around the boats they have
> owned, navigate the stairs in their two-story home without the assistance of others,
> use a ladder for basic home maintenance, operate other gate and latch mechanisms
> within the development, carry garbage to the community garbage dumpster, and
> generally take care of their activities of daily living without third-party assistance.

CP at 34.

The trial court also found that "[t]he more probable explanation for [the Krells']

opposition to the gate [was] simply that they do not like that the gate is there, and they do not

14

like the way the gate makes them feel." CP at 34. The trial court found that these "subjective beliefs [were] not sufficient to tip the balance in their favor." CP at 34.

The trial court further found that the gate did not unreasonably interfere with the Krells' use of the easement. It concluded that the Boys did not breach "any duty they may have to facilitate [the Krells'] use of the easement by their omissions in not objecting to or otherwise preventing or attempting to prevent the installation of the gate." CP at 34. Accordingly, the trial court dismissed the Krells' complaint against the Boys with prejudice. The trial court then ordered the parties to be responsible for their own attorney fees and costs incurred.

The Boys moved for reconsideration of the trial court's decision that each party should be responsible for their own attorney fees and costs. They argued that Section 19.1 of the parties' CC&Rs required an award of fees to the prevailing party.

The trial court denied the motion for reconsideration, in part. The trial court denied the Boys attorney fees and costs under the CC&Rs based on a finding that there was no dispute that the CC&Rs granted the Krells an easement right across the Boys' courtyard and that such easement existed and encumbered the Boys' courtyard. "Rather, the issue in this litigation, as between [the Krells] and [the Boys], was whether the gate constitutes an unreasonable restraint on [the Krells'] easement rights, and whether [the Boys'] breached their duty to facilitate [the Krells'] use of the easement." CP at 10.

The trial court accordingly denied the motion for reconsideration on attorney fees and costs under the CC&Rs because "[t]he CC&Rs were not necessary for [the Boys'] defense or [the Krells'] claims against them. Ultimately, they played no role in the resolution of the dispute

15

between the parties." CP at 10. However, the trial court reserved deciding whether, and if so in what amount, the Boys were entitled to statutory attorney fees and costs.

The Boys appeal and the Krells cross-appeal.

ANALYSIS

I. THE BOYS' APPEAL

The Boys argue that the trial court erred in denying the motion for reconsideration regarding the issue of attorney fees and costs. We agree.

Under CR 59(a)(8), a trial court may vacate an order and grant reconsideration when an error of law occurred at the trial that the moving party objected to at the time and the error materially affects substantial rights of the party. CR 59 (a), (a)(8).

We review a trial court's decision on a motion for reconsideration for an abuse of discretion. *Wiklem v. City of Camas*, 31 Wn. App. 2d 575, 593, 551 P.3d 1067 (2024), *review denied*, 4 Wn.3d 1002 (2025). An abuse of discretion occurs when the trial court's decision is "'manifestly unreasonable or exercised on untenable grounds or for untenable reasons.'" *Constr. Loan Servs. II, LLC v. ECM Riverside LLC*, 32 Wn. App. 2d 281, 291, 554 P.3d 1252 (2024) (internal quotation marks omitted) (quoting *Dynamic Res., Inc. v. Dep't of Revenue*, 21 Wn. App. 2d 814, 824, 508 P.3d 680 (2022)). A trial court abuses its discretion by relying on unsupported facts, taking a view that no reasonable person would take, applying the wrong legal standard, or basing its ruling on an erroneous view of the law. *Gildon v. Simon Prop. Group, Inc.*, 158 Wn.2d 483, 494, 145 P.3d 1196 (2006).

Preliminarily, the Krells argue that the Boys' motion was "defective on its face" because the motion failed to mention or discuss CR 59 and did not provide any grounds upon which the

trial court could grant reconsideration. Resp't's Opening Br. & Cross Appeal at 29-30. The Krells only rely on CR 59(b) in arguing that a moving party is required to mention or discuss CR 59 when bringing a motion for reconsideration. But CR 59(b) provides that a motion for reconsideration must "identify the specific reasons in fact and law as to each ground on which the motion is based." From this provision's plain language, a motion under CR 59 is not facially defective for failing to mention or discuss CR 59. And "[w]here no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962); *see also* RAP 10.3(a)(6).

Moreover, the Boys did provide the basis for their reconsideration motion. As on appeal, the Boys contended that the trial court committed an error of law in its denial of their motion for reconsideration because the litigation related to the enforcement and interpretation of the CC&Rs and, thus, entitled them to an award of attorney fees and costs as the prevailing party. We review an alleged error of law de novo, including the question whether a contract provides a legal basis for awarding attorney fees. *See Thorn v. Sunset Chevrolet, Inc*, 17 Wn. App. 2d 897, 907-08, 492 P.3d 874 (2021); *Gander v. Yeager*, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012).

Washington courts follow the "American Rule," where each party pays its own attorney fees unless an award is authorized by contract, statute, or a recognized ground in equity. *Dave Johnson Ins. Inc. v. Wright*, 167 Wn. App. 758, 783, 275 P.3d 339 (2012). Under Section 19.1 of the CC&Rs, the prevailing party in "litigation relating to the amendment, construction, enforcement, or interpretation of [the CC&Rs]" is entitled to recover reasonable attorneys' fee and costs, including those incurred on appeal. CP at 123.

In the action below, there was no dispute that the subject of the litigation, the Krells' easement, was established by the CC&Rs. However, the trial court concluded that the Boys were not entitled to attorney fees or costs per the CC&Rs because the CC&Rs were not *necessary* to and played no role in resolving the dispute before it. While the trial court did not need to resolve any issue regarding the CC&Rs' meaning or decide whether the CC&Rs conferred a right or not, the Krells' easement right wholly derived from the CC&Rs. Without the CC&R-created easement right, the Boys, presumably, could have defeated the Krells' action against them at an earlier stage in the litigation and minimized their attorney fees and costs. However, because the CC&Rs granted the Krells an easement right over the Boys' property, the Krells' action could proceed. While interpretation of the CC&Rs may not have been necessary at the trial given that the parties agreed that the CC&Rs granted the Krells the easement at the center of their dispute, the CC&R-created right still played a part in the litigation against the Boys. WEBSTER'S THIRD NEW INT'L DICTIONARY 1322 (2002) ("Litigation" is "[t]he act or process of litigating."). In fact, the CC&R-created right is what the Krells were trying to enforce.

The Boys assert that the CC&Rs mandated an award of attorney fees and costs in this case because they were the prevailing party in litigation relating to the enforcement of the CC&Rs. The Boys rely on Black's Law Dictionary's definition of "enforcement" to argue that the action here related to enforcement of the CC&Rs. Am. Br. of Appellants at 15. "Enforcement" is generally defined as either "[a]n attempt to make someone else comply with a law, rule, [or] obligation" or "[t]he act or process of compelling compliance with a law . . . or agreement." BLACK'S LAW DICTIONARY (12th ed. 2024); *see also* WEBSTER'S at 751 ("compelling of the fulfillment . . . as of a law or order."). Moreover, "relating to" connotes a

18

fairly minimal connection between the litigation and enforcement of the CC&Rs. *See* WEBSTER'S at 1916 ("related" means "having relationship" with something); BLACK'S LAW DICTIONARY (12th ed. 2024) ("related" means "[c]onnected in some way.").

The Krells action against the Boys, after the first appeal and following dismissal of the claims against the PLTHA, centered around determining whether the Krells were owed declaratory or injunctive relief in order to get the gate removed or damages based on rights conferred by a term of the CC&Rs. When the Krells clarified their claim following the first appeal, they explained: "simply put, the [] Boys are in clear violation of the restrictive covenants their property is subject to." CP at 61. The remedies the Krells' sought included declaratory relief to clarify the Krells' right to use the easement "without obstruction," permanent removal of the gate, and actual damages. CP at 61. The Krells even requested attorney fees pursuant to Section 19.1 of the CC&Rs. Through this action against the Boys, the Krells at least pursued the process of compelling the Boys to comply with their CC&R-created right to use the easement. Had the trial court ruled in the Krells' favor, the judgment would have allowed the Krells to further pursue enforcement of the CC&R term. Given the breadth of the term "relating to" and the meaning of "enforcement" including the "*process* of compelling compliance," the Krells' action against the Boys at least related to enforcement the CC&Rs-created easement.

We hold that because the litigation, at a minimum, related to enforcement of a right conferred to the Krells through the CC&Rs, the trial court abused its discretion in declining to apply the CC&Rs' attorney fees provision which entitled the Boys to an award of reasonable

attorney fees and costs if they were the prevailing party.[3]  Accordingly, we reverse the trial court's order on reconsideration and remand to the trial court for further proceedings consistent with this opinion.

## II.  THE KRELLS' CROSS-APPEAL

In a cross-appeal, the Krells argue that substantial evidence did not support the trial court's finding that (1) the gate was lightweight with a simple latching mechanism and (2) the gate was reasonably necessary to protect the Boys' grandchildren.  Additionally, the Krells argue that that trial court erred in concluding that the gate did not unreasonably interfere with the Krells' use of their easement and concluding that the Boys did not breach any duty to facilitate the Krells' use of the easement.  We disagree.

A.    *Standard of Review*

We review a trial court's findings of fact for substantial evidence.  *Hegwine v. Longview Fibre Co., Inc*, 162 Wn.2d 340, 352, 172 P.3d 688 (2007).  The party challenging the factual findings has the burden to prove that they are not supported by substantial evidence.  *Blackburn v. Dep't of Soc. & Health Servs.*, 186 Wn.2d 250, 256, 375 P.3d 1076 (2016).  Substantial evidence supports a finding of fact when there is sufficient evidence in the record "'to persuade a rational, fair-minded person of the truth of the finding.'"  *Hegwine*, 162 Wn.2d at 353 (quoting *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004)).

---

[3] The CC&Rs do not define the term "prevailing party."  However, in general, a prevailing party is one who receives an affirmative judgment in their favor.  *Riss v. Angel*, 131 Wn.2d 612, 633, 934 P.2d 669 (1997).

"So long as this substantial evidence standard is met," we will not "'substitute [our] judgment for that of the trial court even though [we] might have resolved a factual dispute differently.'" *Blackburn*, 186 Wn.2d at 256 (quoting *Sunnyside Valley Irrig. Dist. v. Dickie*, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003)). We consider unchallenged findings to be verities on appeal. *Littlefair v. Schultze*, 169 Wn. App. 659, 664, 278 P.3d 218 (2012). We review conclusions of law de novo, and conclusions of law must flow from the findings of fact. *Id*.

B.      *Substantial Evidence Supported the Trial Court's Challenged Findings of Fact*

First, the Krells argue that substantial evidence did not support the trial court's finding that the gate was lightweight with a simple latching mechanism. However, photographs of the gate and its locking mechanism were admitted as exhibits at trial, including a series of photographs showing Marcia Krell demonstrating how the latch moves. Ex. 18, PDF page 42; Ex. 105, PDF pages 143-148. Additionally, two neighbors who had operated the gate testified that they found the gate to be light and the latch easy to operate. With this evidence, a rational, fair-minded person could have been persuaded that the gate was lightweight and the latching mechanism simple. Although the Krells point to other evidence supporting a different conclusion, "[w]e will not substitute our judgment for the trial court's, weigh the evidence, or adjudge witness credibility." *In re Marriage of Greene*, 97 Wn. App. 708, 714, 986 P.2d 144 (1999). Substantial evidence supports this finding.

Next, the Krells assert that substantial evidence did not support the trial court's finding that the gate was reasonably necessary for the protection of the Boys' grandchildren. Substantial evidence supports this finding. At trial, the Boys as well as their daughter testified to their observations that the nearby road could get busy and people would frequently speed on it. The

Boys' daughter stated she felt scared and uneasy when there was no gate. The Boys similarly felt concerned for their grandchildren's safety without the gate, and Kirk Boys even acknowledge that an adult could get hit on the street if they walked out of the courtyard and did not look for cars.

Through its summary judgment order, which the Krells do not challenge on appeal, the trial court found that the Boys had a need to protect their grandchildren from death or serious bodily injury from vehicular traffic. Although, between the summary judgment order and trial, the Boys' grandchildren became a few years older and the Boys' daughter stated that her youngest child could use the gate, a reasonable person could still have found that the gate was reasonably necessary to protect the Boys' grandchildren. Even if the youngest grandchild could operate the gate at the time of trial, a reasonable person could have inferred that the gate still provided a level of protection by forcing the child to pause before exiting the courtyard. Substantial evidence supports the trial court's finding that the gate was reasonably necessary for the protection of the Boys' grandchildren.

C.      *The Factual Findings Supported the Trial Court's Conclusion of Law*

The Krells argue that the trial court erred in concluding (1) that the gate did not unreasonably interfere with the Krells' use of the easement and (2) the Boys did not breach any duty they might have had to facilitate the Krells' use of the easement.

If an individual benefits from an "easement," they have a nonpossessory right to use the land of another. *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 183, 401 P.3d 468 (2017). In general, the owners of a property of which another has an easement over, or the servient estate, may use their property in any reasonable manner that does not interfere with

the easement holder's use of the easement. *Id.* at 183-84. The owner of a servient estate may even engage in reasonable conduct affecting access to the easement "as long as that conduct does not unreasonably interfere with the easement holder's use." *Id.* at 184.

The reasonableness of a restraint depends on balancing the necessity of the restraint for the protection of the servient estate against the degree of interference with the easement holder's use. *Id*. Courts consider the following to determine whether a gate or its ease of use unreasonably interferes with another's easement rights:

> (1) the increased burden on the servient estate, (2) whether the restrictions on the gate are reasonably necessary for protection, and (3) the degree to which the gate interferes with the dominant owner's use.

*NW Props. Brokers Network, Inc. v. Early Dawn Ests. Homeowner's Ass'n*, 173 Wn. App. 778, 793, 295 P.3d 314 (2013).

Here, unchallenged findings of facts and those supported by substantial evidence support the trial court's conclusion that the gate did not unreasonably interfere with the Krells' use of their easement. As discussed above, substantial evidence supported the trial court's finding that the gate here was lightweight and had a simple latching mechanism. The trial court also found that, despite the Krells' contention that medical conditions impaired their ability to operate the gate and its latch, the Krells failed to demonstrate that they could not operate the gate or that operating the gate was difficult for them. Instead, the trial court found that the "[Krells] have shown a penchant for opening the gate for no apparent reason other than to open it and leave it open." CP at 34.

The trial court also found the Krells' testimony regarding the degree of hardship imposed by the gate on them not credible—a determination we do not disturb on appeal. *Greene*, 97 Wn.

23

App. at 714. The trial court noted that, since the gates' installation until trial, the Krells have been able to operate and work on boats, navigate stairs, use a ladder, operate other gates and latches within the development, and carry garbage to a community dumpster. The court found that the more probable explanation for the Krells' opposition to the gate was based in a subjective dislike of the gate's presence and how it made them feel. The Krells do not challenge these findings on appeal and, thus, we treat them as verities. *Littlefair*, 169 Wn. App. at 664.

Finally, the trial court found that, in contrast to unreasonably interfering with the Krells' use of the easement, "[a]ny impact by the gate on [the Krells'] use of the easement is nominal." CP at 34. Given the evidence and unchallenged findings, the trial court did not err in concluding that the gate did not unreasonably interfere with the Krells' easement use.

The Krells rely on three cases in support of their argument that the trial court erred in concluding that the gate did not unreasonably interfere with their use of the easement; however, each is distinguishable from the facts here. *See Littelfair*, 169 Wn. App. at 668 (owner of a servient estate's fence limits the dominant owner to 12 to 14 feet of a 40-foot-wide easement for ingress and egress); *Rupert v. Gunter*, 31 Wn. App. 27, 29, 640 P.2d 36 (1982) (owner constructed a difficult to operate gate due to its weight and awkwardness); *Lowe v. Double L. Props.*, 105 Wn. App. 888, 891, 20 P.3d 500 (2001) (owner erected a heavy front gate, then three more gates across easement, some constructed of barbed wire and very difficult to open). The types of interferences in these cases were much more significant than the "nominal" impact of the gate at the Boys' and Krells' courtyard's entrance.

Next, the Krells argue that ample evidence on the record showed that the Boys failed to take "reasonable affirmative action" to facilitate the Krells' use of the easement. Resp't's

Opening Br. & Cross Appeal at 63. We recognized in *Zonnebloem*, there may be circumstances when the owner of a servient estate could be liable for "wrongful interference with an easement for failing to take a reasonable affirmative action to facilitate the easement holder's use of the easement." 200 Wn. App. at 186.

To support their argument that the Boys failed to take reasonable affirmative actions to facilitate the Krells' use of the easement, the Krells identify the following actions: the Boys' failure to oppose the PLTHA's application to the ARC, the Boys' being co-applicants to the application and present at the ARC hearing, and the Boys' failure to have the gate removed or modified. However, the Krells do not explain how these actions and inactions amount to a breach of duty to affirmatively act when the Boys believed it was reasonably necessary to protect their grandchildren and the Krells were only nominally burdened by the gate. Instead of constituting a breach, the Boys' actions instead fall within those permitted by the law given their need for the gate and its limited impact on the Krells' use of the easement. *See Zonnebloem*, 200 Wn. App. at 184 ("[A] servient estate owner may engage in reasonable conduct that affects access to the easement as long as that conduct does not unreasonably interfere with the easement holder's use."). Accordingly, the Krells fail to show that the trial court erred in concluding that the Boys did not breach a duty.

We hold that the trial court did not err in its conclusions as they were supported by both the unchallenged and substantially supported findings. Accordingly, Krells' arguments fail.

### III. ATTORNEY FEES AND COSTS ON APPEAL

The Boys request attorney fees and costs on appeal pursuant to Section 19.1 of the CC&Rs. We grant their request.

25

"Absent a statute, contract, or recognized grounds in equity to the contrary, parties in civil actions must bear their own attorney fees." *Crossroads Mgmt., LLC v. Ridgway*, 2 Wn.3d 528, 546, 540 P.3d 82 (2023). The CC&Rs' attorney fees provision expressly allows an award of reasonable attorney fees and costs to the prevailing party on appeal as well. Because the Boys have prevailed on their appeal, they are entitled to attorney fees and costs in bringing their appeal and defending against the cross-appeal.

Since we reverse the denial of attorney fees and costs below and remand for further proceedings, we also task the trial court on remand to determine an appropriate award of attorney fees and costs on appeal so to safeguard against the risk of duplication or double recovery. *See Hurlbut v. Crines*, 14 Wn. App. 2d 660, 676, 473 P.3d 263 (2020) (awarding attorney fees on appeal and below and remanding back to the trial court for determination of the award); *see also* RAP 18.1(i) ("The appellate court may direct that the amount of fees and expenses be determined by the trial court after remand.").

## CONCLUSION

We reverse the trial court's denial of the Boys' motion for reconsideration and remand to the trial court for further proceedings consistent with this opinion but otherwise affirm the trial courts' findings of fact and conclusions of law. We also grant the Boys' request for attorney fees and costs on appeal and remand to the trial court for determination of an appropriate award.

No. 60518-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Lee, P.J.

Glasgow, J.